Argued and submitted October 29, 1979, affirmed in part,
reversed in part and remanded January 21, 1980

DONACA, et ux,
*Appellants Cross-Respondents,*

*v.*

IVALL,
*Respondent Cross-Appellant,*
WASHINGTON FEDERAL SAVINGS
AND LOAN ASSOCIATION,
*Respondent.*

(No. 77-4-273, CA 11261)

605 P2d 709

Ridgway K. Foley, Jr., Portland, argued the cause for appellants - cross-respondents. With him on the briefs were Thomas A. Gerber, Elizabeth K. Reeve, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

John C. Caldwell, Oregon City, argued the cause for respondent - cross-appellant Glen E. Ivall. With him on the brief was Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

No appearance made by respondent Washington Federal Savings and Loan Association.

Before Schwab, Chief Judge, and Buttler and Roberts, Judges.

ROBERTS, J.

## ROBERTS, J.

Both parties appeal from the judgment of the trial court awarding plaintiffs nominal damages for defendant's violation of the Declaration of Restriction to which the properties owned by both are subject.

Plaintiffs have lived in their home since 1974 when it was built for them. Defendant purchased a lot across the street from plaintiffs in 1976 and began to build a home on that lot in January, 1977. Much of the property in the area, including defendant's lot, is hilly and steep. It is desirable, however, because of the view of the Tualatin Valley and coastal range which it affords. Defendant's house is between plaintiffs' house and a portion of that view.

From the time defendant began construction on his house plaintiffs expressed concern that he comply with the "Declaration of Restrictions on Palisades Heights Plat No. 2" (Declaration) to which both properties are subject.[1] Plaintiffs' primary concern was with the height of defendant's house.[2] They feared obstruction of their view, which they had attempted to maximize by the design and placement of their house. The portions of the Declaration which particularly concerned them were:

"1. *Residential Use Only.* All parcels in the tract shall be known and described as residential parcels, on which no structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single-family

---

[1] The exact dates on which plaintiffs expressed their concern and the precise stage of construction reached by defendant at those times are not necessary to this opinion and we have not attempted to set them out.

[2] Height was apparently the only concern until a few days before trial when plaintiffs discovered what they considered to be additional violations of the Declaration. They requested permission to amend their complaint to include violations of the prohibition against houses of more than two stories and the set back requirements. The trial court refused to allow amendment of the pleadings at trial and that decision is not assigned as error on appeal.

[123]

dwelling *not to exceed two stories in height* and a private garage * * *.

"* * * * *

"1(b) *Height of Buildings.* In order that the unusual view value of the area may be preserved to the best advantage of all property owners, there are some lots in this plat on which two-story houses will not be permitted. Permissible heights for all lots will be available from Neighborhood Committee *but no special permission will be needed for any house which does not exceed 20 feet from average grade level of the building* site to the peak of the roof.

"* * * * *

"5. *Approval of Plans. No building shall be erected, placed or altered on any building plot in this subdivision until the external design and location thereof have been approved in writing by the neighborhood committee* which shall be appointed or elected by the owners of a majority of the lots which are subject to the covenants herein set forth; *provided, however, that if such committee fails to approve or disapprove such design and location within twenty (20) days after such plans have been submitted to it, such approval will not be required.*

"* * * * *" (Emphasis supplied.)

Defendant's house extends 31 feet from the average grade level to the peak of the roof, and defendant did not obtain approval from the Neighborhood Committee (Committee) before beginning construction of his house.

Defendant contends that the Committee was no longer in existence when he began construction, based on the following provisions of the Declaration:

"10. *Neighborhood Committee.* There is hereby authorized and created a Neighborhood Committee to be selected and with authority and powers as hereinafter provided. The Declarant does hereby appoint [five named individuals] to serve as such Committee starting with the date at which this instrument is recorded and *continuing until 70% of the lots have been sold,* for all purposes and with full authority as provided herein. *At the end of said period and*

[124]

*every two years thereafter there shall be an election to select the successors of the original Committee."* (Emphasis supplied.)

The parties have stipulated that as of January, 1977, 70% of the lots in Plat No. 2 had been sold. No elections were held until after suit was instituted in the spring of 1977. Of the original members of the Committee, only Robert Bangs remained at the times pertinent to this case. He testified that he was not certain whether or not he was still functioning as the Committee when defendant began construction. Defendant did submit his plans to Bangs at some point after plaintiffs began to protest his failure to comply with the Declaration. Bangs did not approve or disapprove the plans because of his uncertainty as to his status as the Committee, but testified that they would probably have been approved by the Committee as a solution allowable for that particular lot.[3] He further testified that the Committee had never denied approval to submitted plans, but had occasionally suggested slight modification. The Committee had used 20 feet as the lowest they could require, it being their standard for the height of a one-story house. He said it was more of a guide for the Committee than a height restriction as such.

Plaintiffs contend defendant has violated the height restrictions contained in the Declaration and seek a mandatory injunction requiring that defendant lower his house to no more than 20 feet above the average grade level of the lot. Alternatively, they seek damages in the amount of the diminution in value of their property because of the additional 11 feet in the height of defendant's house.

---

[3] Bangs was apparently the one who decided whether approval should be granted even when the Committee was operating with all five members. He reviewed the plans and recommended approval or modification.

[125]

Defendant, on the other hand, contends that the Declaration does not set any specific height restriction, and that he did not violate the Declaration because he did all he reasonably could do to obtain approval from the Committee where there was uncertainty as to whether the Committee existed.

The trial court found the Declaration set no specific height restriction; defendant's house did not interfere unreasonably with plaintiffs' view; but defendant violated the Declaration by failing to submit his plans to the Committee for approval. Based on those findings the trial court denied plaintiffs' prayer for injunction but awarded $200 nominal damages and attorney fees.

Restrictions such as those contained in the Declaration are generally enforceable. *See Alloway v. Moyer,* 275 Or 397, 550 P2d 1379 (1976); *Snashall et ux v. Jewell et ux,* 228 Or 130, 363 P2d 566 (1961); *Rodgers et ux v. Reimann et ux,* 227 Or 62, 361 P2d 101 (1961). However, we must first determine what restrictions were placed on the property by the Declaration. Plaintiffs' contention that there is a limit of 20 feet is not supported by the language of the Declaration or by the practice of the Committee for several reasons. The language of paragraph 1(b) of the Declaration does not directly specify a 20 foot limit and when read with paragraph 5 does not even say that houses 20 feet or less in height need not obtain approval. The Committee considered it to be the lowest that could be required of a house because they considered 20 feet to be the usual height for a one-story house. The Declaration, however, states that two stories is the limit for houses in the plat. A 20 foot height restriction would be inconsistent with a two story limit. For these reasons we agree with the trial court that there was no specific height restriction established by the Declaration.

Plaintiffs sought an injunction or damages based on the contention that defendant exceeded the allowable height by 11 feet. However, because there is no 20

foot height restriction plaintiffs have no right to require that defendant's house be no higher than 20 feet. The Committee could have approved plans with a height exceeding 20 feet and the only evidence was that had the Committee acted it "probably" would have approved defendant's house as it was.

The Declaration did, however, require that defendant's plans be submitted to the Committee for approval. Defendant contends that he did not violate the Declaration because the Committee as such was no longer in existence when he began construction. We do not agree that the Committee had ceased to exist.

The language of the Declaration relating to the makeup of the Committee is much like the language at issue in *Weston v. Foreman,* 108 Cal App 2d 686, 239 P2d 513 (1952), in which the California court held that the committee continued to exist until a successor was elected and approval was still required even after the termination date of the appointed committee had passed.

The parties in this case have stipulated that 70% of the lots had been sold by January, 1977. The record does not show exactly when 70% of the lots were sold. It would be unreasonable to interpret the Declaration as intending that the Committee cease to function the instant the lot was sold which brought sales over the 70% mark. The restrictions were to continue, according to the terms of the Declaration, until 1994. Without a committee the requirement for approval of plans would be nugatory. In addition, the fact that the expiration of the original Committee was set upon the occurrence of an event which could not be predicted to happen at any specific time indicates that the Committee would be expected to remain in existence during the time required for holding elections for a successor committee. The record does not reveal the amount of time which passed between the sale of 70% of the lots and the election of the new committee. It has not been shown that the interval was so unreasonable that the

original Committee should be held to have lost its authority.

Therefore, we hold that the Committee was still in existence when defendant began to build his house. We find, however, that defendant satisfied the requirements of the Declaration. Defendant did submit his plans to Bangs, the only remaining Committee member, after plaintiffs brought the issue of approval to his attention. Bangs told defendant that he was not certain whether or not he was still functioning as the Committee and, therefore, he did not approve or disapprove the plans.

Defendant did what was required by the Declaration in submitting his plans for approval. That submission triggered the operation of the proviso of paragraph 5 of the Declaration which states that if the Committee fails to act on submitted plans within 20 days approval will not be required. Defendant's plans were not approved or disapproved within 20 days after they were submitted, therefore defendant was not in violation of the Declaration when he continued with construction of his house.[4]

In his cross-appeal defendant seeks not only reversal of the trial court's judgment based on the findings that he violated the Declaration but attorney fees at trial and on appeal pursuant to ORS 20.096[5] and the provision of the Declaration authorizing an award of attorney fees to those who seek to enforce it. ORS

---

[4] Although the Declaration can be interpreted as requiring submission of plans before construction begins, it seems clear that if defendant had received approval from Bangs when he submitted the plans, even though after he had begun construction, that would have fulfilled the requirements of the Declaration.

[5] ORS 20.096 provides:

"(1) In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce the provisions of the contract shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and necessary disbursements."

20.096 makes such a contract provision reciprocal. *Bliss v. Anderson,* 36 Or App 559, 585 P2d 29, 37 Or App 773, 588 P2d 112 (1978), *rev den* (1979).

Restrictive covenants, such as this Declaration have been held in other jurisdictions to be contracts. *See Sheridan v. Martinsen,* 164 Mont 383, 523 P2d 1392 (1974); *Barrows v. Jackson,* 112 Cal App 2d 534, 247 P2d 99 (1952); *Riley v. Boyle,* 6 Ariz App 523, 434 P2d 525 (1967). The Supreme Court has referred to such restrictions as "* * * contractual obligations imposed upon all lot owners * * *." *Ludgate v. Somerville,* 121 Or 643, 648, 256 P 1043 (1927). Therefore, we find ORS 20.096 applicable to this action.

However, attorney fees on appeal are not specifically provided for in the Declaration and are, therefore, not available under ORS 20.096. *Blue Ribbon Bldgs. v. Struthers,* 276 Or 1199, 1206, 557 P2d 1350 (1976); *Dean Vincent, Inc. v. Krishell Lab.,* 271 Or 356, 361, 532 P2d 237 (1975); *McMillan v. Golden,* 262 Or 317, 497 P2d 1166 (1972).

We remand for the determination of and the entering of a judgment for defendant's attorney fees in the trial court.

Affirmed in part, reversed in part, and remanded.