Argued and submitted May 12, 1995, award of attorney fees reversed; otherwise affirmed January 24, petition for review allowed July 23, 1996 (323 Or 690)
See later issue Oregon Reports

Oscar O. DOMINGO
and Patricia M. Domingo,
*Appellants,*

*v.*

Ace R. ANDERSON,
W. Louis Larson, Lucy E. Kivel
and D. Richard Fisher,
*Respondents.*

(9306-03850; CA A84591)

910 P2d 402

Les Rink argued the cause and filed the briefs for appellants.

Lee Aronson argued the cause for respondents. With him on the brief was Schulte, Anderson, Downes, Carter & Aronson, P.C.

Before Warren, Presiding Judge, and Edmonds and Leeson, Judges.

WARREN, P. J.

## WARREN, P. J.

In this action for breach of contract, breach of fiduciary duty and negligence, plaintiffs appeal from a summary judgment for defendants. ORCP 47 C.[1] They also appeal an amended judgment that awarded attorney fees to defendant Anderson. We affirm in part and reverse in part.

These facts are not in dispute. In 1983, plaintiffs gave Anderson a promissory note (the Anderson note), which was secured by a trust deed on real property that became plaintiffs' residence. The Anderson note provided that, after plaintiffs paid the obligation to Anderson, they would assume an underlying loan on the property.[2] Plaintiffs defaulted on the Anderson note and the trustee's attorney, defendant Larson, commenced foreclosure proceedings.

On January 13, 1993, plaintiffs were served with an amended notice of default, which recited the amount that plaintiffs owed on the Anderson note, plus interest, and that plaintiffs also owed the balance on the "underlying debt." There was no amount stated for the underlying debt. Larson scheduled a public sale on May 18, 1993. On May 13, 1993, plaintiff Oscar Domingo (Domingo) called Larson's office and expressed an interest in curing the default. The next day, plaintiffs visited Larson's office. Larson was out of town. Plaintiffs told Larson's partner, defendant Fischer,[3] that they wanted to cure the default. Fischer said that he had not read the file. Although plaintiffs did not tender any payment to Fischer, Fischer called the person Larson had selected to conduct the sale, defendant Kivel, and asked her to postpone it.

The sale was rescheduled for June 11, 1993. On May 24, 1993, Larson sent plaintiffs a letter that set forth the amount due on sale, $13,800.59. The letter stated that, if plaintiffs paid that amount, they would be current on the Anderson note but would still owe money on the underlying

---

[1] ORCP 47 C was amended by the 1995 Legislature. Or Laws 1995, ch 618, § 5. The changes do not affect our determination of this case.

[2] A substitute note and an extension on the trust deed were executed in 1991. The new note and trust deed extension have no independent significance in this case.

[3] Larson and Fischer are attorneys. Fischer was also the trustee designated in the trust deed.

debt. On June 1, 1993, Larson sent plaintiffs another letter that set forth the amount needed to cure the default, $14,190.57, as well as the amount that would be required as a minimum bid at the sale. That letter did not mention the underlying debt. It also declared that plaintiffs could cure the default by tendering payment of the total amount due on the Anderson note by 5:00 p.m. on June 7, 1993. Plaintiffs failed to tender any payment or cure the default by that date.

On June 9, 1993, Domingo telephoned Larson and complained about a purported error in the amount necessary to cure the default. Later that day, after reviewing the file, Larson sent plaintiffs a letter which, for the first time, explicitly set forth the amounts owed on the Anderson note and the underlying debt and said that a minimum bid at the foreclosure sale would have to include those amounts. At the sale, Anderson made the only bid on the property.

Later, plaintiffs brought this action for breach of contract, breach of fiduciary duty and negligence. They alleged that the trust deed and trust deed extension constituted a contract. Next, plaintiffs alleged that a term in that contract provided that, in the event that they defaulted, Anderson could elect to foreclose the trust deed pursuant to ORS 86.740 to ORS 86.795. Plaintiffs further alleged that defendants had failed to comply with ORS 86.745, which requires, in part, that the notice of sale set forth the "sum owing on the obligation secured by the trust deed." They also alleged that Larson should have postponed the sale because of the errors in the notice of sale. Finally, they alleged that they were damaged in an amount equal to the difference between the fair market value of the foreclosed property and the encumbrances on that property. Their claims for breach of fiduciary duty and negligence were against Fischer, Larson and Kivel, and were based on essentially the same facts.

Plaintiffs and defendants made separate motions for summary judgment. The trial court granted defendants' motion, denied plaintiffs' motion, and entered judgment for defendants. Later, the trial court entered an amended judgment that awarded attorney fees to Anderson.

■  On appeal, plaintiffs' first two assignments challenge the trial court's granting of summary judgment for defendants. As we understand it, plaintiffs assert that Anderson breached a term in the contract: the requirement that Anderson give proper statutory notice, under ORS 86.745, of the amount owing on the obligation secured by the trust deed. From that premise, plaintiffs argue that, because of the breach, they were damaged and, therefore, the court erred in granting summary judgment against them. According to plaintiffs, before they received the June 9, 1993, letter from Larson, they believed that they could purchase the property at the foreclosure sale by paying the amount due on the Anderson note, $15,444.16. They contend that they learned on June 9, 1993, for the first time, that the amount due on the sale of the property, which included the underlying debt of $11,985.40, was $27,285.68. They argue that they could not raise the additional money necessary to "make a meaningful bid," because they had only two days' notice of the actual amount of the obligation.

Defendants argue that, assuming that the notices stated an incorrect amount owing on the obligation secured by the trust deed, plaintiffs have failed to establish any causal relationship between those notices and their alleged damages. They assert that plaintiffs never had the money to cure the default, that plaintiffs failed to make any tender of money to Larson and, in any event, that plaintiffs would not have and did not bid at the foreclosure sale. In short, defendants argue that the trial court did not err, because even if they breached a term in the contract by giving defective notice of the amount due, plaintiffs did not suffer any damages. We agree with defendants.

In his affidavit submitted in support of plaintiffs' motion for summary judgment, Domingo said that he did not cure the default because the June 1, 1993, letter contained a mistake on the amount needed to cure the default and that he believed that he could borrow the additional money necessary to purchase at the sale. He also said that he "did not bid at sale because $11,985.40 was beyond my power to borrow in the two days remaining before sale." In his deposition, Domingo testified that a friend, Scouten, had agreed to loan him the

additional money necessary to pay "whatever will be the amount I owe to Mr. Anderson."[4]

A reasonable inference from that evidence is that, given proper notice, plaintiffs could have borrowed sufficient money to make the *minimum* bid at the foreclosure sale. However, there is also evidence that Anderson was prepared to bid up to $5,000 *over* the minimum bid. There is no evidence or permissible inference from any facts in the record that plaintiffs would have, under any circumstances, borrowed funds in excess of the minimum due on sale, whatever that amount might be.[5] In other words, even if plaintiffs had received timely notice of the actual amount due on sale, the only permissible inference from the record is that Anderson would have outbid them.[6] It follows that, if plaintiffs could not have purchased their property at the foreclosure sale, they did not suffer the damages that they alleged — loss of equity — as a result of the defective notice. Thus, even assuming that defendants breached the contract, there is no evidence that the breach caused plaintiffs' alleged damages.

There is no triable issue of fact about whether plaintiffs' alleged damages were caused by defendants' breach of contract. Accordingly, plaintiffs' claim for breach of contract fails as a matter of law. *Wm. Brown & Co. v. Duda*, 91 Or 402, 179 P 253 (1919). The trial court did not err in granting defendants' motion for summary judgment.

■ Plaintiffs next assign error to the trial court's award of attorney fees to Anderson. They argue that Anderson failed to plead his claim for attorney fees properly, because he did not assert his right to attorney fees based on the contract until, in plaintiffs' words, "after judgment was ordered in the underlying case." Anderson responds that plaintiffs themselves had pleaded a right to attorney fees under the contract and could not claim surprise when Anderson claimed the same right.

---

[4] There is no evidence that plaintiffs ever borrowed that money from Scouten or ever tendered any amount of money in an effort to cure the default.

[5] In fact, Domingo's testimony was that he discussed only borrowing funds sufficient to make up the difference between the cash he had on hand and *the minimum amount due.*

[6] ORS 86.755 requires the trustee to sell the property to the highest bidder for cash.

■ ■     As a general rule, a party has no right to recover attorney fees from an opponent unless a statute or contract confers that right. ORCP 68 C(2); *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990). ORCP 68 C requires a party seeking attorney fees to assert that right by pleading the facts, statute or rule that provides a basis for the fees. Here, plaintiffs' first complaint asserted various claims but did not allege a claim for breach of contract. Anderson answered and alleged a right to attorney fees under ORS 20.105, which provides, in part, that attorney fees may be awarded against a party who has acted in bad faith. Plaintiffs' amended complaint alleged a breach of contract and sought attorney fees under the contract and ORS 20.096. Anderson did not file an amended answer but instead filed a motion for summary judgment, in which he argued that the contract did not include the provision that plaintiffs alleged he had breached. He also argued in the alternative that, he and the other defendants were entitled to summary judgment, because plaintiffs' damages were caused by their failure to cure the default, not because of any wrongful conduct by defendants. After the order against plaintiffs on the parties' motions for summary judgment, Anderson amended his answer. He admitted that there was a contract between the parties, but denied any breach. He also asked for attorney fees under the contract.

Because Anderson's original answer had alerted plaintiffs that he would be seeking attorney fees on some theory, and because plaintiffs themselves asserted a right to attorney fees under the contract, plaintiffs were necessarily aware that if they proved the existence of a contract with Anderson, but failed to prove a breach or damage, they would be liable for fees under the contract. The fact that Anderson did not expressly assert a right to attorney fees under the contract or statute until after the court granted his motion for summary judgment does not provide a basis for denying him fees. *See Attaway, Inc. v. Saffer*, 95 Or App 481, 770 P2d 596, *rev dismissed* 308 Or 184 (1989); *Horn v. Lieuallen Land and Livestock Corp.*, 69 Or App 285, 288, 684 P2d 1246, *rev den* 297 Or 824 (1984). We conclude that Anderson adequately pled his entitlement to attorney fees.

■     Plaintiffs' final argument[7] is that the court erred in awarding attorney fees to Anderson because the Professional

---

[7] Plaintiffs characterize their argument as an assignment of error. However, it is more properly characterized as an additional argument about why the court erred in awarding attorney fees to Anderson.

Liability Fund (PLF) provided his legal representation at no cost to him.[8] They assert that, because Anderson did not incur any attorney fees in defending the action, he is not entitled to an award for those fees. As they state, "Anderson is not a lawyer, is not insured by the PLF, and has in no respect paid for legal services rendered to him." Defendants respond that Anderson, as prevailing party on the contract claim, has a contractual right to attorney fees, and the fact that Anderson was not personally liable for the attorney fees is not dispositive. Anderson claims a right to attorney fees under the trust deed, which provides, in part, that plaintiffs agreed:

> "[I]n any suit, action or proceeding in which the beneficiary or trustee may appear, including any suit for the foreclosure of this deed, to pay all costs and expenses, including evidence of title and the beneficiary's or trustee's attorney fees; the amount of attorney's fees mentioned in this paragraph 7 in all cases shall be heard by the trial court and in the event of an appeal from any judgment or decree of the trial court, grantor further agrees to pay such sum as the appellate court shall adjudge reasonable as the beneficiary's or trustee's attorney's fees in such appeal."

The question is whether, under the unusual facts of the case, Anderson incurred attorney fees that the contract entitles him to recover.

What makes this case unusual is that Anderson is not an attorney, yet the Professional Liability Fund, the statutory malpractice insurer for all Oregon attorneys, ORS 9.080(2), paid for his defense to plaintiff's claims. The PLF had no contractual or other duty to Anderson to do so. Rather, it defended him as part of protecting two of its insureds, Anderson's previous lawyers, who were his codefendants; Anderson presumably had potential malpractice claims against the lawyers arising from their handling of the underlying transaction.

---

[8] According to the affidavit filed by the attorney for defendants, the same attorney represented all four defendants. The fee statements attached to the affidavit are directed from the law firm to the PLF for services "REGARDING: LARSEN AND FISCHER/Domingo v." Plaintiffs do not make any argument that the attorney did not represent Anderson in this case.

Neither Anderson nor any entity with any relationship to him had any obligation to pay for the legal services that he received. There is no evidence of an express or implied contract between Anderson and his present attorneys that he would pay them.[9] No insurer had any obligation to provide Anderson a defense. Rather, the PLF provided his attorneys as part of protecting its own insureds; Anderson just happened to be in a position to receive the benefit of the PLF's own needs. He appears, that is, to have been a kind of third-party donee beneficiary (in a nontechnical sense) of the contracts between the attorneys and the PLF. He received a defense because the PLF decided that that was the best way to fulfill its obligations to its insureds. In these circumstances, an award of attorney fees would be a windfall, either to him or to the PLF.[10]

There are two potentially relevant Supreme Court cases; in each the foundation for the decision is the court's desire to prevent a windfall. In *Parquit Corp. v. Ross*, 273 Or 900, 543 P2d 1070 (1975), the defendant, Harvey, represented himself. Although he was a lawyer, he was suspended from practice during most of the case, including the trial, and the court therefore treated him as a nonlawyer. It noted that a party who is not an attorney might incur some loss because of representing himself or herself but that that loss would be insignificant compared to the cost of securing an attorney. Because Harvey did not actually incur attorney fees, he was not entitled to recover them under the relevant contract provision. 273 Or at 903. The basis for the decision is that, because market rate attorney fees would be far greater than

---

[9] This is different from a situation in which a client agrees to pay an attorney contingent on some event, such as recovery of a judgment or a judicial award of attorney fees under a statute or contract. In that situation the attorney agrees to forego all or part of the attorney's fee unless the contingency occurs. In this case, however, Anderson's attorneys relied on an unrelated entity for payment of their fees; there is no evidence of any contingency in which Anderson would be liable for those fees.

[10] This situation differs from a public interest organization that represents a party without charging a fee in order to further the organization's goals. In such situations the client is not the incidental beneficiary of some other legal obligation of the organization; rather, the client and the organization have the common interest of achieving the organization's purposes in the specific case. The organization does not receive a windfall if the losing party bears the burden of the successful joint promotion of that purpose.

the loss that Harvey suffered as a result of the self-representation, an award of those fees would be a windfall. No lawyer actually claimed any fees.[11]

In *Associated Oregon Veterans v. DVA*, 308 Or 476, 782 P2d 418 (1989), the prevailing defendant, a state agency, sought fees at the market rate rather than the lower rate that the Department of Justice had actually charged. The court recognized that the reasonable rate for the legal services that the defendant received might well be considerably greater than the actual charges. Nevertheless, it held that the defendant could collect only the amount that its attorney actually charged. "The party, again, although a public party, is not entitled to more than it spent on attorney fees." 308 Or at 481. The court's focus, in its short paragraph on the issue, was on the *amount* that the agency paid, not on whether it was entitled to anything at all. As in *Parquit Corp.*, the court's purpose was to avoid a windfall. The Department of Justice, in its billings, had established the price for the services that the defendant received.

In short, Anderson received a defense gratuitously as part of the PLF's performance of its contractual duty to third parties. Neither Anderson, nor anyone else who had any relationship to him, paid, or had any vested or contingent obligation to pay, any attorney fees for that defense. In these circumstances, an award of attorney fees would be a windfall, either to Anderson or to the PLF. It would be a windfall to Anderson because he did not incur any expenses that would justify it. It would be a windfall to the PLF because it provided the defense to benefit the attorneys, its insureds, not Anderson. The attorneys had no contractual right to recover their fees from the plaintiff, and the PLF, therefore, had no reasonable expectation that it would do so. Plaintiff should not have to reimburse the PLF for the expense of protecting insureds who had no right of their own to recover attorney fees from plaintiff.[12]

Award of attorney fees reversed; otherwise affirmed.

---

[11] The court left open the issue cf whether an attorney representing himself or herself could recover reasonable fees. 273 Or at 901 n 1.

[12] Defendants rely on cases from other states in support of their argument that Anderson is entitled to attorney fees under the contract. None of those cases, however, involves a potential windfall to an entity that had no obligation to provide a defense to the prevailing party.