Argued and submitted February 5, affirmed on appeal; reversed and remanded on cross-appeal August 11, 1999

# LITTLE WHALE COVE HOMEOWNERS ASSOCIATION, INC.,
an Oregon corporation,
*Appellant - Cross-Respondent,*

*v.*

## Stanley D. HARMON
and Bette G. Harmon,
Trustees of the Harmon Living Trust,
*Respondents - Cross-Appellants,*

*and*

## FIRST AMERICAN TITLE,
an Oregon corporation,
Trustee of a Deed of Trust dated September 11, 1995;
and Chase Manhattan Personal Financial Services,
a division of Chase Manhattan Mortgage Corporation,
Beneficiary of said Deed of Trust,
*Defendants.*

## Stanley D. HARMON
and Bette G. Harmon,
*Third-party Plaintiffs,*

*v.*

## Carl HALVORSON,
Judith Harkness and Lillan Crom,
*Third-party Defendants.*

(973640; CA A102208)

986 P2d 616

Garry P. McMurry argued the cause and filed the briefs for appellant - cross-respondent.

James L. Murch argued the cause for respondents - cross-appellants. With him on the briefs was Sherman, Sherman & Murch.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

KISTLER, J.

---

\* Kistler, J., *vice* Warren, P. J., retired.

**KISTLER, J.**

Plaintiff, a homeowners association, fined defendants, two of its members, for applying to the city for a variance. Plaintiff placed a lien on defendants' property in the amount of the fine and then brought this action to foreclose the lien. On cross-motions for summary judgment, the trial court ruled that the applicable covenants did not prevent defendants from asking the city for a variance. It also ruled that defendants could not recover their attorney fees. The court entered judgment accordingly. Plaintiff appeals from the court's judgment on the merits. Defendants cross-appeal from the judgment on attorney fees. We affirm on the appeal and reverse on the cross-appeal.

Little Whale Cove subdivision is a planned development. Recorded covenants, codes, and restrictions (CC&Rs) bind the land owners in the subdivision. Among other things, the CC&Rs establish an Architectural Committee and provide that "[n]o owner shall construct, reconstruct, alter, refinish or maintain any improvement upon, under or above any parcel or residential unit * * * unless the owner has first obtained the consent thereto of the Architectural Committee." The CC&Rs also provide that the "Architectural Committee may in its sole discretion withhold consent to any proposed work if the Committee finds that the proposed work would be inappropriate for the particular parcel or incompatible with the high design standards that Developer intends for the Project." Finally, the CC&Rs authorize the Committee to promulgate Architectural Guidelines that have the same force as the CC&Rs.

Defendants Stanley and Bette Harmon were considering buying a home in Little Whale Cove. In August 1995, Stanley approached the Architectural Committee with some of his own sketches to show how he would expand the second floor of the home he and his wife were considering. At the meeting, the committee offered its tentative opinion that his planned expansion would not be acceptable. Shortly afterwards, the committee wrote defendants that it had rejected their proposed modifications to the home. Although defendants received the committee's letter, they believed the committee's decision might be different if it were asked to review

an architect's proposal rather than their own sketches. Defendants were also aware that they needed to obtain a variance from the City of Depoe Bay before they could remodel the second floor of the home, but their realtor had told them that that should be easy to do. Defendants accordingly purchased the home in Little Whale Cove.

After defendants bought their home, they asked the city for a variance before they asked the Architectural Committee to approve their proposed remodel. Stanley explained why they took that route: "Nothing would be gained by going to the trouble and expense of obtaining a full set of plans, submitting them to the Architectural Review Committee and then, if they approved them, thereafter applying to the City of Depoe Bay for a variance." "[R]ather, the obvious order would be to request the variance" first. If the city denied it, then there would be no reason to apply to the Architectural Committee. "[I]f [the city] approved, then [they would] go ahead and obtain the blueprints and submit them to the Architectural Review Committee for approval and then apply to the City of Depoe Bay's Building Department for a building permit."

After defendants applied for a variance, the attorney for plaintiff, the Little Whale Cove Homeowners Association, wrote them. He explained that he had been asked to review their application and that, in his opinion, they had no right to a variance. He said that even if they obtained a variance, they could not remodel their home until they obtained the Architectural Committee's consent. Finally, he told them that if they attempted to remodel their home without first getting the Architectural Committee's consent, plaintiff would bring an action to enjoin them from remodeling and would seek to recover its costs in opposing the variance as part of that action. The attorney's letter did not say that, in his opinion, defendants could not seek a variance until the Architectural Committee had approved their plans.

At the hearing on the variance, plaintiff objected to defendants' application, and the city denied it. On February 1, 1997, the chair of the Board of Directors for the Homeowners Association wrote defendants. He told them that they had violated the CC&Rs and the Architectural Guidelines when

they applied for a variance without first getting the Architectural Committee's approval of their proposed remodel. After recounting the events that had occurred, the chair's letter stated: "Since the record clearly shows a willful violation of the procedures adopted by the Homeowners Association, the Board of Directors of the Association finds you in violation of the Declaration and the Guidelines and assess[es] a fine in the amount of $11,025.95."[1] The letter also stated that plaintiff was filing a lien in that amount on defendants' property and that if the full amount of the fine were not paid within 30 days, plaintiff would foreclose its lien.

Defendants did not pay, and plaintiff filed this action against them to foreclose its lien. Before the trial court, both plaintiff and defendants agreed that the dispositive issue was whether the CC&Rs and the Architectural Guidelines prohibited defendants from applying for a variance without first getting the Architectural Committee's approval. Plaintiff argued that the trial court was required to defer to the Architectural Committee's interpretation of the CC&Rs and the Guidelines, while defendants responded that because the rules were unambiguous, the trial court was free to interpret them as a matter of law. On cross-motions for summary judgment, the trial court ruled that the restrictive covenants did not require defendants to get the Architectural Committee's approval before they applied for a variance. Plaintiff has appealed from that ruling.

■■ We start with the standard of review. When the parties to a contract agree that a neutral third party will decide any dispute that arises under the contract, the courts have respected their agreement. *See Valenti v. Hopkins*, 324 Or 324, 334-35, 926 P2d 813 (1996) (summarizing cases). They have deferred to the third-party's decision unless the person challenging that decision establishes that it was the result of fraud, bad faith, or a failure to exercise honest judgment. *Id.* at 335. The Supreme Court explained in *Valenti* that the same principle applies when an architectural committee is charged with applying and enforcing restrictive covenants in a subdivision. *Id.* at 334-35.

---

[1] That figure allegedly represented the legal costs that plaintiff had incurred in opposing defendants' application for a variance.

■ Relying on *Valenti*, plaintiff argues that we should defer to the Architectural Committee's interpretation of the CC&Rs and Architectural Guidelines. The difficulty with plaintiff's argument is that the record does not show that the Architectural Committee ever decided that the CC&Rs and the Guidelines required defendants to get its approval before they applied for a variance.[2] Rather, the record shows that the Board of Directors of the Homeowners Association made that decision. On February 1, 1997, the chair of the Board of Directors for the Homeowners Association told defendants that they had violated the CC&Rs and Guidelines by applying for a variance without first getting the Architectural Committee's approval.[3] His letter states: "Since the record clearly shows a willful violation of the procedures adopted by the Homeowners Association, the Board of Directors of the Association finds you in violation of the [CC&Rs] and the Guidelines and assess[es] a fine in the amount of $11,025.95."

The decision that gave rise to the lien foreclosure (and the decision we are asked to review) was a decision by the Board of Directors of the Homeowners Association. The CC&Rs do not give the Homeowners Association or its Board the authority to resolve disputes arising under the CC&Rs or the Architectural Guidelines. They give that authority to the Architectural Committee. Whatever deference might be owed to the Architectural Committee's decision, none is owed to the Board's. We accordingly follow the standard of review generally applicable to contracts; the interpretation of the CC&Rs and the Architectural Guidelines presents initially a question of law. *See Valenti*, 324 Or at 331 (describing general standard of review); *accord Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (same).

---

[2] Section 3.4.8 of the CC&Rs provides that "[t]he [Architectural] Committee may render its decisions *only* by written instrument setting forth the action taken by the members consenting thereto." (Emphasis added.) Plaintiff's complaint does not allege that the Committee issued a written decision (or even a verbal one) limiting the members' right to apply for a variance, nor was any evidence offered at summary judgment to show that it had.

[3] The Board's February 1, 1997, letter summarizes the events that led up to its imposition of the fine. The summary does not refer to any decision by the Architectural Committee, either chronologically or as the basis for the Board's decision to impose the fine.

■      The terms of the CC&Rs are clear. As noted above, section 3.4 of the CC&Rs lists a series of acts that an owner may not take "unless the owner has first obtained the consent thereto of the Architectural Committee." The list is both exhaustive and detailed. It provides in part that an owner may not "construct, reconstruct, alter, refinish or maintain any improvement upon, under or above any parcel or residential unit." It does not prohibit an owner from applying for a variance without first getting the Architectural Committee's consent. The plain language of section 3.4 is inconsistent with plaintiff's position.

Plaintiff, however, relies on a description of the architectural review procedures set out in the Architectural Guidelines. The Guidelines explain that an owner who wishes to remodel his or her home should submit a preliminary design to the Committee. If the preliminary design is approved, he or she should then submit a full set of final working drawings to the Committee. The Guidelines state: "After approval [of the final working drawings] is given in writing, your next step is to submit three (3) full sets of plans to the City of Depoe Bay Planning Commission for a building permit." The Guidelines add that "[t]he City will distribute these plans for approval, usually within five (5) days if there are no variations to the Little Whale Cove restrictions or the City of Depoe Bay's Codes and Restrictions."

The Guidelines on which plaintiff relies set out a series of steps for owners to take in getting plans approved. They do not purport to define what an owner may or may not do without first getting the Architectural Committee's consent.[4] As such, they provide no reason to question the clear language of section 3.4, which specifies the acts an owner is prohibited from taking until he or she gets the Architectural Committee's consent. In any event, the procedures at most contemplate that an owner will get the Architectural Committee's approval of his or her plans before applying for a building permit. They do not suggest, in any way that would

---

[4] If, for example, an owner submitted a final set of drawings to the Committee rather than a preliminary set, as the Guidelines contemplate, then we doubt that the owner would be in violation of the either the CC&Rs or the Guidelines.

call into question the plain language of the prohibition in section 3.4, that an owner may not apply for a variance before asking the Architectural Committee to approve his or her plans. Because the terms of the CC&Rs and the Guidelines are clear, the trial court correctly granted summary judgment in favor of defendants.

We turn to defendants' cross-appeal. Section 8.6 of the CC&Rs provides that if the Homeowners' Association brings an action to foreclose a lien and prevails, then it may recover its reasonable attorney fees from the owner. In its complaint, plaintiff alleged that it was entitled to recover its fees under that section if it prevailed on its lien claim. When defendants filed their amended answer, counterclaims, and third-party complaint, they specifically alleged as part of their two counterclaims that they were entitled to attorney fees under the CC&Rs if they prevailed on either counterclaim.[5] At the end of their amended answer, defendants specifically asked the court to award them fees if they prevailed on plaintiff's lien foreclosure claim. They also separately asked for fees if they prevailed on either of their two counterclaims.[6]

Plaintiff moved to strike the attorney fee allegations in defendants' two counterclaims. It argued that the fee provision in section 8.6 of the CC&Rs was not reciprocal. Plaintiff recognized that if the CC&Rs were considered a contract, ORS 20.096(1)[7] would make the one-sided fee provision in section 8.6 reciprocal. It argued, however, that because the

---

[5] Defendants consolidated their counterclaims with their third-party complaint. The first counterclaim and third-party complaint sought a declaratory judgment that defendants were entitled to remodel their home. The second counterclaim and third-party complaint sought damages from plaintiff and the third-party defendants for improperly preventing defendants from remodeling their home. Defendants alleged that they were entitled to attorney fees under the CC&Rs if they prevailed on either of these two counterclaims.

[6] Defendants do not call the request at the end of their answer a prayer for relief, but it appears to be the functional equivalent of a prayer and we treat it as such.

[7] ORS 20.096(1) provides:

"In any action or suit on a contract, where such contract specifically provides that attorney fees and costs incurred to enforce provisions of the contract shall be awarded to one of the parties, the prevailing party, whether that party is the party specified in the contract or not, at trial or on appeal, shall be entitled to reasonable attorney fees in addition to costs and disbursements."

CC&Rs were equitable servitudes on the land, not contracts, ORS 20.096(1) was inapplicable. Defendants responded that ORS 20.096(1) applied because the CC&Rs were contractual in nature. The trial court granted plaintiff's motion to strike. Although the court did not explain its ruling, it apparently accepted plaintiff's argument that the CC&Rs authorized an award of attorney fees only for plaintiff.

In response to the trial court's ruling on that motion and other pretrial motions plaintiff filed, defendants filed a second amended answer that omitted the two counterclaims that had included the allegations for attorney fees.[8] Defendants also removed all requests for attorney fees from the prayer at the end of their second amended answer and affirmative defenses.

On cross-appeal, defendants assign error to the ruling striking their allegation that they were entitled to attorney fees if they prevailed on plaintiff's lien claim. They argue that the trial court erred in ruling that the CC&Rs were not contracts within the meaning of ORS 20.096(1). They note that the Supreme Court's holding in *Valenti* is based on the proposition that CC&Rs are contractual and that our decision in *Donaca v. Ivall*, 44 Or App 121, 129, 605 P2d 709 (1980), holds that ORS 20.096(1) applies to CC&Rs. Plaintiff does not dispute that point on appeal. It responds instead that because defendants' second amended answer omitted the two counterclaims that included the fee allegations the trial court struck, any question whether the trial court erred in striking those allegations is moot.

Plaintiff's response does not squarely meet the ruling that defendants have assigned as error. Defendants have not assigned error to the ruling striking their fee requests if they prevailed on their counterclaims. Rather, they have assigned error to the ruling striking their fee request if they prevailed on plaintiff's lien foreclosure claim. There are, however, two procedural hurdles that defendants must clear before we can reach the merits of their fee claim. The first is

[8] Plaintiff had also moved to strike the first counterclaim and key elements of the second counterclaim. The trial court granted that motion. On cross-appeal, defendants have not assigned error to the circuit court's rulings striking their counterclaims.

whether defendants' request for attorney fees in their prayer for relief satisfied the requirements of ORCP 68 C(2). If it did, then the second question is whether defendants' omission of that request from their second amended answer precludes them from challenging the trial court's ruling on appeal.

■    ORCP 68 C(2) requires a party seeking attorney fees to allege the basis for the fee request either in a pleading or in a motion if no pleading has been filed. Technically, defendants' fee request did not comply with ORCP 68; a request for fees in a prayer is not an allegation under ORCP 68 C. We have recognized, however, that "[a]lthough on its face ORCP 68 C is stringent, its mandate is tempered by ORCP 12 B, which directs the court to 'disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party.' " *Lumbermen's v. Dakota Ventures*, 157 Or App 370, 375, 971 P2d 430 (1998). We accordingly have "look[ed] to whether [the party from whom fees are ultimately sought] was fairly alerted to the fact that attorney fees would be sought and whether the defect in the pleading prejudiced [that party]." *Id.*

■    In this case, plaintiff pled that it was entitled to fees under the CC&Rs if it prevailed on its lien foreclosure claim, and the prayer in defendants' amended answer specifically put plaintiff on notice that defendants intended to seek fees if they prevailed on plaintiff's claim. *Compare Lewis v. Dept. of Rev.*, 294 Or 139, 143, 653 P2d 1265 (1982) (recognizing that a prayer specifically requesting attorney fees puts the other party on notice) *with McNeely v. Hiatt*, 138 Or App 434, 443, 909 P2d 191 (1996) (general prayer for "further relief as the court may deem equitable and just" insufficient basis for later seeking fees). Not only does defendants' request in the prayer satisfy the standard we announced in *Lumbermen's*, but our decision in *Domingo v. Anderson*, 138 Or App 521, 527, 910 P2d 402 (1996), *rev'd in part on other grounds* 325 Or 385, 938 P2d 206 (1997), confirms that the request in defendants' prayer was sufficient.[9]

---

[9] The plaintiffs' initial complaint in *Domingo* did not include a breach of contract claim. 138 Or App at 527. The defendant's answer sought fees on the ground that the plaintiffs had brought their claims in bad faith. *Id.* The plaintiffs then filed an amended complaint, which added a breach of contract claim and sought fees if they prevailed on that claim. *Id.* The defendant moved for summary judgment and

■ Because defendants' pleading provided a sufficient basis for seeking fees, the remaining question is whether defendants gave up their request for fees if they prevailed on plaintiff's lien claim when they omitted it in response to the trial court's ruling. The issue arises because plaintiff's motion to strike was directed at the two specific allegations contained in defendants' counterclaims. Read narrowly, the court's ruling only required defendants to omit the two fee allegations in their counterclaims; it did not specifically direct them to omit their request for fees if they prevailed on plaintiff's lien foreclosure claim, although the legal principle underlying the court's ruling required that they do so.

■ We have recognized that "[c]ompliance with a judgment does not preclude a party from maintaining an appeal, unless it appears that compliance 'was voluntary, not coerced, and made with the view of settlement.' " *Yeon Street Partners v. Environmental Consulting,* 112 Or App 251, 254, 828 P2d 477 (1992). Although that principle applies equally to a trial court's intermediate order, the question that defendants' fee request raises is whether, on the facts of this case, defendants voluntarily decided to omit their request for fees if they prevailed on plaintiff's lien claim. We note that in this case defendants were faced with the trial court's intermediate ruling that they had no right to recover fees under the CC&Rs under any circumstances. They omitted their request for fees if they prevailed on plaintiff's lien foreclosure claim in response to and in the face of that ruling. Defendants' compliance with the trial court's ruling does not bar them from challenging it on appeal; to hold otherwise would penalize a party for following the legal principle the trial court announced.

■ We accordingly reach the merits of defendants' fee claim. Plaintiff does not dispute that if we reach the merits, defendants are entitled to fees under section 8.6 of the

---

made no mention of seeking fees under the contract until after the trial court had granted his summary judgment motion. *Id.* On appeal, we concluded that the defendant's unrelated request for fees in his initial answer, coupled with the plaintiffs' request for fees under the contract in their amended complaint, was sufficient to put the plaintiffs on notice that the defendant would seek fees under the contract if he prevailed on their breach of contract claim. *Id.* Defendants' fee request in this case satisfies the standard we articulated in *Lumbermen's* and applied in *Domingo.*

CC&Rs and ORS 20.096(1). We agree that ORS 20.096(1) makes the contractual right to fees created in section 8.6 of the CC&Rs reciprocal. *See Donaca*, 44 Or App at 129. We accordingly reverse the trial court's judgment on defendants' claim for attorney fees and remand for further proceedings consistent with this decision.

Affirmed on appeal; reversed and remanded on cross-appeal.