Argued and submitted September 4, 1987, reversed and remanded with instructions February 10, 1988

## In the Matter of the Marriage of

### WELBY,
nka Stuart,
*Respondent,*
*and*

### WELBY,
*Appellant.*

(D8306-64523; CA A41993)

749 P2d 602

Ronald E. Hergert, Oregon City, argued the the cause for appellant. With him on the brief was Hibbard, Caldwell, Bowerman, Schultz & Hergert, Oregon City.

No appearance for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Father appeals from an order modifying the custody provision of a dissolution judgment to transfer custody from him to mother.

In April, 1984, the parties entered into an agreement which gave father custody of the child. The agreement followed a custody investigation by Multnomah County Family Services, which recommended that custody be given to father. The agreement was incorporated into a dissolution judgment; neither party appeared in court. Mother had signed the agreement with no intention of following it, and in May, 1984, she absconded with the child to North Carolina. She secreted the child's whereabouts from father during the two years she spent in North Carolina. In May, 1986, mother turned herself in to the authorities, and she later pled guilty to custodial interference in the third degree, a Class C felony. She was placed on probation for two years. She then moved to modify the custody provision of the dissolution judgment to gain sole custody of child.

At trial, experts and family members testified that the child would be better off with mother, but that both parents were fit. The trial court found that there was no substantial change of circumstances but decided that, because the original custody judgment was never litigated, a showing of changed circumstances was not required.

Father argues that a substantial change in circumstances is required to change custody and that there was none here. We agree with father that a substantial change of circumstances is required. *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976); *Niedert and Niedert,* 28 Or App 309, 559 P2d 515, *rev den* (1977). We are not free to disregard that holding of the Supreme Court. On *de novo* review, we agree with the trial court and father that there was no substantial change of circumstances. Mother cannot rely on evidence of her strengthened relationship with her child which resulted from her felonious abduction and secreting of him to show a substantial change of circumstances. So to hold would encourage custodial interference such as occurred here to obtain an advantage in custody disputes. The trial court erred in modifying the custody provision. Without evidence of a change in circumstances, we do not reach the issue of the child's best

interests. *Remillard and Remillard,* 30 Or App 1111, 1114, 569 P2d 651 (1977).

Reversed and remanded with instructions to award custody to father.

**ROSSMAN, J.,** dissenting.

The child is the real loser in this case. The majority opinion demonstrates the need for a fresh look at our approach to child custody modification. Because I believe that the opinion is contrary to the best interests of the child, inconsistent with the relevant statutes and mechanically applies a rule in a manner inconsistent with its underlying rationale, I respectfully dissent.

A trial judge in this kind of case is confronted with a unique trio of circumstances: clear and convincing evidence that the best interests of a child are that he be placed with one parent, an original decree that was never litigated, but no substantial change in circumstances which would warrant reopening the issue under mechanical application of the rule. I believe that the trial judge responded appropriately to the circumstances in this case.

The dissolution agreement in this case followed a custody investigation by Multnomah County Family Services which recommended that custody be given to father. The recommendation was made despite the fact that the home in which father lived was occasionally without heat and water and that he had spanked the child so hard as to leave bruises on his buttocks. The custody study found that mother had an "inability to deal with" father and a "frustration in his control of her," as well as a "long and inadequate work schedule."

Mother remarried in December, 1984, and the child lived with her and his stepfather until mother turned herself in to the authorities in May, 1986. During her two years in North Carolina, mother was not employed and was the primary caretaker of the child. The child had been placed in school in North Carolina and was doing very well there, got along well with his stepfather and had many friends. Pending completion of the court proceedings below, he was placed first in a foster home and then with his paternal grandparents, with a visitation schedule set up for both parents.

Five witnesses at trial besides the parents testified on the issue of who was the better parent, including the father's parents. All but one of those witnesses, including father's father, testified that custody should be awarded to the mother; one, father's mother, could not make a recommendation. The witnesses were fully aware of the fact that mother had absconded with the child. The reasons given by the witnesses for preferring mother's custody included stability, the quality of mother's care and father's significant personality problems. The only witness who opined that custody should be given to father was father himself. The record shows at most that father is not unfit.

The relevant statutes[1] demonstrate that, in a child custody modification action, the best interests of the child are paramount. ORS 107.137(1) provides:

> "In determining the custody of a minor child pursuant to ORS 107.105 [divorce] or ORS 107.135 [modification], *the court shall give primary consideration to the best interests and welfare of the child.*" (Emphasis supplied.)

Nothing in ORS 107.135 or ORS 107.137 qualifies that rule. The statute continues:

> "The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors." ORS 107.137(2).

The substantial change in circumstances rule was, of course, judicially created. It is not mandated by statute. ORS 107.135(1) provides, in part:

> "The court has the power, *at any time after a decree * * * is granted,* upon the motion of either party * * * to:
>
> "(a) Set aside, alter or modify so much of the decree as may provide for the custody [of] * * * children." (Emphasis supplied.)

The sole statutory reference to the change in circumstances rule concerns only changes in spousal and child support. ORS 107.135(3).

---

[1] Minor changes to these provisions were made by the 1987 legislature. Those changes do not affect this case. The current versions of the statutes are quoted throughout.

There are two reasons for the substantial change in circumstances rule: "to discourage repeated litigation of the same issues and, more important, to provide young children with a stable environment." *Niedert and Niedert,* 28 Or App 309, 313, 559 P2d 515, *rev den* (1977). A stable environment is promoted by continuity in custodial relationships and reduced likelihood of relitigation. However, focusing solely on stability does not always promote the best interests of the child; hence ORS 107.137(2) requires that no single factor be relied on exclusively in making custody modification decisions. The purpose behind the substantial change rule is, ultimately, to promote the best interests of the child. When the substantial change rule is in conflict with the best interests of the child, the rule defeats its own purpose and must yield. This is such a case.

Courts in other jurisdictions have resolved the tension between the substantial change rule and the best interests of the child in two ways. Each approach has its problems. Some states have abolished the "substantial change" rule entirely; in those states, the only issue in a modification action is whether the change in custody would be in the best interests of the child. *See Friederwitzer v. Friederwitzer,* 55 NY2d 89, 447 NYS2d 893, 432 NE2d 765 (1982). That approach is consistent with the primary focus on the best interests of the child, but does not address the fact that the threat of litigation itself may undermine the stability of custodial relationships. *See* Wexler, "Rethinking the Modification of Child Custody Decrees," 94 Yale L J 757 (1985).

Other states have concluded that the substantial change in circumstances rule should not apply to decrees resulting from default or stipulation. The Kansas Supreme Court has held that the rule applies only to prior litigation. It stated that the goal of preventing relitigation of issues has merit, but that, when the rule bars courts from considering relevant evidence it never heard, the rule is inconsistent with the best interests of the child and must yield. *Hill v. Hill,* 228 Kan 680, 620 P2d 1114, 1119 (1980). The Washington Supreme Court has also held that the rule should not apply to unlitigated decrees because of the "continuing paramount concern for the best interests of the child":

> "A couple should not be able to foreclose judicial inquiry into

facts which may assist in making the critical determination of how a child's interests would best be served, by agreeing as to who should receive original custody. * * * '[T]he primary concern of the courts is always the welfare of the child. It would be unrealistic to assume that this concern can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other.' " *Timmons v. Timmons*, 94 Wash 2d 594, 617 P2d 1032, 1035 (1980), quoting *Rankin v. Ferriter*, 76 Wash 2d 533, 458 P2d 176, 179 (1969).

However, that approach also presents several problems. First, it reflects a judicial suspicion of parental agreements that is not present when the agreements are originally submitted to a court for approval, and suspicion of the parent's reasons for entering an agreement but not of the reasons for challenging it. Second, some objections to the rule of changed circumstances in this context are based on the *res judicata* origins of the rule. Granting preclusive effect to an unlitigated decree may make little sense from the perspective of judicial procedure, but it is helpful in promoting stability in children's lives. Third, because most custody cases are resolved by agreement, the change in the rule undermines the stability of most original decrees and subjects children to more harmful litigation. *See* Sharp, "Modification of Agreement-Based Custody Decrees: Unitary or Dual Standard?" 68 Va L Rev 1263, 1289-90 (1982).

As a former trial judge, I recognize the great importance of involving parents in the resolution of custody questions. Parents' active participation in authoring their own justice should promote a spirit of cooperation that is best for everyone involved. Unfortunately, that is not always the result. Negotiation of a divorce and custody settlement can be as contentious and bitter as any litigated proceeding. A party may obtain the desired result through exertion of superior economic power and tenacity, as the facts suggest may have been the case here. In such a circumstance, the best interests of a child may be overcome by other issues. However, the primary focus of the court must be on the best interests of the child. It is inconsistent with the court's primary responsibility to protect the best interests of the child to allow the parties, by initial agreement as to custody, to evade judicial inquiry into

facts relevant to a custody decision. Moreover, it forces a court to make a decision in a vacuum, bound by facts that it never considered and a decision made by private parties that, had a court made them, would warrant reversal on appeal.

In a case such as this one, the policies behind the change in circumstances rule dictate that an exception be made. I believe that the most appropriate way to resolve the tensions between the best interests of the child, stability in custody decrees and preventing relitigation is neither to abolish the substantial change rule for unlitigated decrees nor to apply it mechanically in every case. I would hold that, when a party seeks to challenge an award of custody granted in a decree based on a stipulation, the party must show by clear and convincing evidence that the change in custody will substantially promote the best interests of the child. In the great majority of cases where a party attacks an unlitigated decree, the moving party will be required to demonstrate a substantial change in circumstances. The usual "swearing contest" or "battle of the experts" will not meet this exception to the substantial change in circumstances rule. When a court finds clear and convincing evidence that a change in legal custody would substantially promote the best interests of the child, and if the issue of custody has not previously been litigated, the change in custody should be allowed. In this case, where all the non-party witnesses making a recommendation were unanimous in their view that custody of the child should be granted to the mother, and the witnesses included the father's parents, I would hold that custody was properly awarded to the mother.

Finally, father argues that awarding custody to mother will encourage child snatching. His focus is misplaced. A court's responsibility in a child custody modification proceeding is to provide for the best interests of the child. Punishment for mother's crime is the province of criminal law. The relevance of her actions to her suitability as a parent was discussed at length by the witnesses in the trial court. The testimony by the witnesses was that mother should be awarded custody despite her offense. The trial court agreed. Denying mother custody in this case to punish her for her misdeeds is in fact a punishment of the child. By awarding

custody to father, the majority has defeated the primary statutory and judicial goal of promoting the best intests of the child. Accordingly, I dissent.