Argued and submitted October 9, 1995, affirmed April 17, petition for review allowed September 24, 1996 (324 Or 229)

STATE OF OREGON,
Department of Human Resources ex rel
Pamela JOHNSON,
*Respondent,*

*v.*

Jason BAIL,
*Appellant.*

(F542; CA A83626)

915 P2d 439

Clayton C. Patrick argued the cause for appellant. With him on the brief was Patrick & Meadowbrook.

Gordon L. Dick argued the cause for respondent. With him on the brief was Wheeler & Dick, Attorneys at Law.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

Deits, P. J., concurring.

## DE MUNIZ, J.

Father appeals from a judgment awarding custody of the parties' minor child to mother. We affirm.

The dispute concerns the custody of a child born July 6, 1987. Mother and father never married.[1] Paternity was not disputed and, in August 1987, an administrative order establishing paternity was entered in circuit court.[2] Mother had physical custody of the child. Father visited the child regularly until a few weeks after her birth. At that time, a dispute arose between the parties, and father threatened mother.[3] Mother then moved with the child from her family's home and concealed the location from father. In October 1987, father obtained an order specifying visitation rights, which mother did not obey.[4] Father then initiated proceedings relating to mother's failure to obey the visitation order but was unable to serve mother. Finally, in October 1988, father filed motions to change custody of the child, terminate his child support and hold mother in contempt. He also moved for an order permitting alternative service[5] on mother. Alternative service was ordered on October 10, and that service was completed December 9. On December 23, the court

---

[1] We note at the outset that, although the parties never married, they have the same rights and responsibilities as married or divorced parents, and the provisions of ORS 107.095 to 107.425 regarding custody of a child apply. ORS 109.103.

[2] The administrative order was entered pursuant to the provisions of ORS 416.400 to ORS 416.470 (*since amended by* various sections of Or Laws 1995, chs 343, 422, 514, 608, and 609) because mother received public assistance. Various statutes cited in this opinion were amended by the 1995 Oregon Legislature. However, none of the amendments applies to this case.

[3] Mother testified that she feared for her safety.

[4] The parties dispute whether personal service on mother was actually accomplished with regard to the first visitation order. In any event, mother never challenged that order.

[5] Alternative service is provided for in ORCP 7 D(6)(a), which states:

"On motion upon a showing by affidavit that service cannot be made by any method otherwise specified in these rules or other rule or statute, the court, at its discretion, may order service by any method or combination of methods which under the circumstances is most reasonably calculated to apprise the defendant of the existence and pendency of the action, including but not limited to: publication of summons; mailing without publication to a specified post office address of defendant, return receipt requested, deliver to addressee only; or posting at specified locations. If service is ordered by any manner other than publication, the court may order a time for response."

entered an order changing the child's custody to father and terminating support after finding mother in default for failure to appear. The court also issued a writ of assistance to Oregon law enforcement officials ordering them to place the child, if found, in father's custody. No judgment was ever entered. At some point, mother moved with the child to California and went into hiding using an assumed name. She lived there for about four years until she was discovered by the police and father. She returned to Oregon in October 1992 and, in February 1993, pled guilty to custodial interference in the second degree. The juvenile court granted temporary custody of the child to Children's Services Division.[6] However, mother retained physical custody subject to visitation by father.

In February 1993, mother moved to dismiss the 1988 order granting father custody on the grounds that service on her had been inadequate.[7] She also moved to modify the 1988 order to return legal custody of the child to her.

After an evidentiary hearing, the trial court held that the service was inadequate and set aside the 1988 custody order.[8] It then found that, although both parents were

_____

[6] The juvenile court case was consolidated with the present action.

[7] We do not address the appropriateness of the "motion to dismiss." The trial court appears to have handled the matter as a motion to set aside the custody order and we discuss it accordingly.

We also note that both the parties and the trial court framed the issue as one of personal jurisdiction under ORCP 4. However, personal jurisdiction does not appear to be the proper issue. Once a court has entered a judgment in a domestic relations matter, it retains personal jurisdiction over the parties. ORS 107.135(9); *Scarth v. Scarth*, 211 Or 121, 127-28, 315 P2d 141 (1957); *Killam and Heald*, 109 Or App 1, 4-5, 818 P2d 509 (1991). An administrative order entered pursuant to ORS 416.400 to ORS 416.470 has the effect of a judgment when it is docketed with the circuit court. ORS 416.440(3). Accordingly, it appears that the court had personal jurisdiction over mother from the time the administrative order establishing paternity was docketed in 1987. However, ORS 107.135(1) (*since amended by* Or Laws 1995, ch 22, § 2) specifies that a party seeking modification must provide notification in the manner required for service of summons (ORCP 7 D). Therefore, although personal jurisdiction may not be the proper issue, the question of adequate service remains the same.

[8] The parties seem to assume that the court set aside the order under ORCP 71 B(1) (relief from judgment). Under that rule, a court may set aside a judgment only under a limited set of circumstances. Because a judgment was never entered in this case, it appears that the court also could have set aside the order under ORCP 69 C (setting aside a default order or judgment) (*formerly* ORCP 69 D). ORCP 69 C permits a court to set aside an order taken by default under the much broader

fit, it was in the best interests of the child to grant mother custody. In the alternative, the court found that even if service of the 1988 order had been adequate, mother was still entitled to custody because she had shown a change in circumstances.

■ Father's first assignment of error is that the trial court erred in setting aside the prior custody order on the ground that service on mother was inadequate. His second assignment is that the trial court erred in granting custody to mother. The issue of adequate service is important because if the order awarding custody to father is set aside, then the present action is the first time that a court has determined custody and mother need only show that granting custody to her is in the best interests of the child. ORS 109.175.[9] If the order is not set aside, then mother must seek to modify it. Father argues that to modify the order, mother must show that a substantial change in circumstances has occurred since entry of the order before the issue of the child's best interests can be reached. We begin with father's first assignment.

■ We generally review a trial court's decision to set aside a judgment or default order for abuse of discretion. *Weaver and Weaver*, 119 Or App 478, 481, 851 P2d 629 (1993). However, that discretion is controlled by fixed legal principles. *Hiatt v. Congoleum Industries*, 279 Or 569, 575, 569 P2d 567 (1977). Because adequacy of service is a question of law, *Luyet v. Ehrnfelt*, 118 Or App 635, 637-38, 848 P2d 654 (1993), we review it for legal error. ORAP 5.45 n 1.

standard of "good cause." However, because mother challenges only the adequacy of service, we are limited to that issue and do not address any other grounds on which the court could have set aside the order.

[9] ORS 109.175 (*since amended by* Or Laws 1995, ch 608, § 4) provided:

"If paternity of a child born out of wedlock is established pursuant to a petition filed under ORS 109.125 or an order or judgment entered pursuant to ORS 109.124 to 109.230 or ORS 416.400 to 416.470, the parent with physical custody at the time of filing of the petition or the notice under ORS 416.415 has sole legal custody until a court specifically orders otherwise. The first time the court determines who should have legal custody, neither parent shall have the burden of proving a change of circumstances. The court shall give primary consideration to the best interests and welfare of the child and shall consider all the standards set out in ORS 107.137."

Father argues that the trial court, in setting aside the order of default, erroneously disregarded the adequacy of the alternative service under ORCP 7 D(6)(a). We agree.

The 1988 order authorizing alternative service was based on father's affidavit, which alleged that: mother had avoided service; mother lived at her parents' address;[10] mother received her mail at her parents' address; mother's public assistance checks were mailed to that address; and mother, mother's father, and mother's mother all provided that address to the Department of Motor Vehicles. The order required personal service on mother's father, mother's mother, and the Oregon Department of Human Resources (DHR). It also required father to notify mother by certified mail, in care of her father. Service on DHR was made by delivery to the Attorney General's office on October 13. Mother's mother was personally served at the parents' address on November 26. Mother's father was personally served at his place of work on December 6. Father attempted to serve mother by certified mail on December 9, but her parents returned it unopened. At some point, mother was aware of father's efforts to serve her through her parents and left the state to avoid service.[11] The parties disagree on whether mother received actual notice.

In seeking to set aside the prior order of custody, mother argued that father had not effected adequate *substitute* service under ORCP 7 D(2)(b). She did not, however,

---

[10] The partial transcript of prior proceedings attached to father's affidavit indicates that mother may not have been living at her family's address at the time of the order. However, the transcript also shows that mother had at least regular contact with her father.

[11] Mother testified:

"Q: What was the reason you moved from Willamina?

"A: Because my mother and father discussed with me that they thought they—that Jason was trying to serve them and then they talked to an attorney, the attorney said that that would automatically serve me if they were around me.

"Q: Your parents asked you to leave because of that?

"A: Yes and no.

"Q: Can you explain?

"A: I was the one who decided to leave. My parents —when I left my parents didn't know I left, I just left."

argue that the 1988 order authorizing *alternative* service was deficient or that father somehow failed to comply with the requirements of that order. The trial court found that father had not complied with the substitute service provisions of ORCP 7 D(2)(b) but did not identify any deficiency in father's compliance with the order authorizing alternative service. Because father's alternative service of the 1988 motion to change custody was legally sufficient, the trial court erred in setting aside the 1988 default order of custody.[12]

Because the 1988 order granting father custody is valid, we turn to the issue of the child's custody. We review *de novo*. ORS 19.125(3).

■■ A party seeking to modify a previous custody order must show that there has been a substantial change of circumstances since the previous order was entered. *Greisamer and Greisamer*, 276 Or 397, 400, 555 P2d 28 (1976). The parties disagree on whether the change in circumstances rule applies to an order taken by default. If it does, they also disagree on whether mother has shown that a substantial change of circumstances occurred. We first address the issue of whether the change of circumstances rule applies.

Father argues that mother must show a substantial change of circumstances under *Welby and Welby*, 89 Or App 412, 749 P2d 602 (1988). In *Welby*, the parties had initially agreed that the father should have custody. Neither party appeared in court and that agreement was incorporated into the judgment of dissolution. Instead of giving the child to the father, the mother absconded with the child and kept their whereabouts secret for two years. In *Welby*, the trial court held that, because the custody issue had never been litigated, a change of circumstances was not required. We disagreed.

Here, the trial court attempted to distinguish *Welby* as follows:

---

[12] Father also challenges the trial court's factual findings and argues that mother's motion to dismiss for lack of personal jurisdiction was not timely made. Because we conclude that service was adequate, we need not address those arguments.

"In my view, however, *Welby* is distinguishable. First of all in *Welby* the parties arrived at a custody decree by stipulation. Thus the law presumes that the decision was in the best interest of the child and that those best interests, and the maintenance of the stability of that best interest situation, can only be overcome by a showing of substantial change in circumstance. Here, however, the earlier decree was by default—a default this court has just decided was improperly granted and has been set aside. Thus there has been no determination in this case either by stipulation or by the court that custody with one parent is in the child's best interest."

Mother basically echos the trial court's position and argues that we should likewise find that *Welby* is distinguishable from the circumstances here. Alternatively, mother asks us to overrule *Welby*. We decline to do either.

■ The fact that this case involves a custody order taken by default does not relieve mother of her burden to show a change of circumstances. The change of circumstances rule applies even if the prior order was entered *ex parte*. *Henrickson v. Henrickson*, 225 Or 398, 402, 358 P2d 507 (1961).

■ Mother argues that, in the case of a default order, there is no starting point from which to determine a change of circumstances. To the extent that is a problem, it can be remedied. During the modification proceeding, the parties may introduce evidence to show what the circumstances were at the time the previous order was entered. *Stevens and Stevens*, 107 Or App 137, 140, 810 P2d 1334, *rev den* 312 Or 81 (1991). That will establish the starting point to determine whether a change of circumstances has occurred.

We also find no basis on which to overrule *Welby*. The change of circumstances rule is required by a long line of precedent, which we cannot disregard. *See, e.g., Greisamer*, 276 Or at 400. Mother's argument that the change of circumstances rule lacks statutory authority ignores ORS 109.175,[13] which applies in this case. That statute provides that "[t]he first time the court determines" custody in a paternity matter, "neither parent shall have the burden of proving a change of circumstances." That wording strongly implies that

---

[13] Quoted in full at note 9 above.

when a proceeding involves a modification rather than an initial determination, a change of circumstances is required.

■ Because we conclude that the change of circumstances rule applies, we must now determine whether mother met her burden. Father argues that, under *Welby*, the trial court erred by treating the child's "strengthened relationship" with mother as evidence of a change of circumstances. In *Welby*, we held:

> "Mother cannot rely on evidence of her strengthened relationship with her child which resulted from her felonious abduction and secreting of him to show a substantial change of circumstances. So to hold would encourage custodial interference such as occurred here to obtain an advantage in custody disputes." 89 Or App at 414.

■ Our language in *Welby* should not be read as broadly as father does here. *Welby* does not stand for the proposition that a "strengthened relationship" with the abducting parent can *never* be used as evidence of a change of circumstances. In *Welby*, the mother relied on a "strengthened relationship" that was *solely* the result of the child's abduction. However, even where a child has been abducted or secreted, there may be other unrelated circumstances that may be the basis of a "strengthened relationship" with the abducting parent. In other words, if the "strengthened relationship" is due to circumstances *not solely* related to the child's abduction or secreting, it may be considered by the court in determining whether there has been a change of circumstances.

Here, the trial court found that mother had proved a change of circumstances "based on the child's unfamiliarity with [father] and the risk now posed to the emotional stability of the child if [her] custody were awarded to [father]." Father argues that the child's unfamiliarity with father is simply the flip-side of the "strengthened relationship" argument and, as such, mother cannot use that unfamiliarity as evidence of a change of circumstances. We agree that using the child's unfamiliarity with father as evidence of a change of circumstances is really no different from using the child's "strengthened relationship" with mother. However, we do not agree with father's argument that that is what the trial court did in finding a substantial change of circumstances.

After mother returned to Oregon and submitted to the jurisdiction of the court, a visitation schedule with father was established immediately. Within two weeks of father's introduction to the child, he was granted physical custody on alternating weeks. A few days into the first week of father's custody, the parties agreed that the child could not last the entire week with father. The parties then agreed to alternate custody every two days. Eventually, four-and-one-half months after the juvenile court's initial visitation order, mother and father again alternated custody on a weekly basis. According to the child's therapist, the manner in which father was abruptly interjected into the child's life has had a severely detrimental impact on the child emotionally, which will only be exacerbated if father were to be awarded sole custody of the child.

The emotional problems experienced by the child, caused by the manner in which father was abruptly interjected into the child's life, and the resulting risk of further harm to the child if father were to have sole custody are circumstances *not solely* the result of mother's abduction and secreting of the child. The trial court's conclusion that those post-abduction events resulted in a substantial change of circumstances was not error.

The only remaining issue is whether awarding custody to mother is in the child's best interests. Father does not dispute the trial court's determination that it is in the child's best interests to grant mother custody. We conclude that the trial court properly awarded custody to mother.

Affirmed.

**DEITS, P. J.,** concurring.

I join in the lead opinion's disposition and in its reasoning. I write separately to comment on one aspect of the case. I agree, for the reasons stated in the lead opinion, 140 Or App at 342, that the circumstances of this case are distinguishable from those in *Welby and Welby*, 89 Or App 412, 414, 749 P2d 602 (1988), where we held that the "strengthened relationship" between a parent and child that results

from custodial interference or similar wrongful conduct *cannot* be the basis for finding a substantial change of circumstances. Here, as the lead opinion holds, the changes in circumstances did not result solely from the custodial interference, and *Welby* therefore does not control.

In my view, however, *Welby* is due for a comprehensive reexamination. *Welby's* blanket rule has two interrelated defects, both of which were identified by Judge Rossman in his dissent in that case: First, it eliminates the factual inquiries that are truly relevant to a custody determination and replaces them with a rule of deterrence that is more suitably addressed—and has been addressed—by the criminal law; and, second, it visits the sins of the absconding parent on the head of the abducted child.

No one condones custodial interference. I do not suggest that "bonding" that results from that act should necessarily or generally be given the same weight in determining whether circumstances have changed as the affection and dependence that evolve from lawful contacts between the noncustodial parent and the child. That does not mean, however, that a child who has been abducted should be deprived of all consideration of the emotional ties that he or she has developed, and which all other children are entitled to have considered in custody decisions. Stated another way, the fact of the illegal conduct should be *considered* in making the change of circumstances and custodial determinations, but it should not be treated as a universal and *per se* negative *answer* to the inquiry, as *Welby* would require.

To illustrate, there would normally be a vast difference in both the bonding and the change of circumstances analysis if a child became primarily affiliated with a parent at the age of two and had remained so for 10 years, rather than if the affiliation began at age six and had endured for one year. Under *Welby*, however, that and similarly graphic factors would have to be disregarded if the primary affiliation began by reason of custodial interference; in such instances, under *Welby*, a clear and substantial change of circumstances, as well as the best interests of the child, could be given no consideration if they happened to originate with an abduction, however remote its occurrence.

*Welby* cites no authority for its underlying proposition that the deterrence of a particular kind of parental misconduct is not only to take precedence over, but is to replace the usual mode of analysis in change of custody cases. It may be that the resolution under *Welby* and under the conventional criteria will generally coincide. However, beyond the fact that *Welby* replaces the child's well-being with the parent's punishment or deterrence as the *exclusive* determinant, its principal *operational* vice may inhere in its inflexibility: It is simply not correct to say that the relationship of a child with both of its parents cannot be changed beyond the possibility of meaningful restoration by the passage of time, simply because the time period began with a wrongful act.

Haselton, J., joins in this concurring opinion.