Argued and submitted January 15, decision of the Court of Appeals and judgment of the circuit court affirmed June 12, 1997

## STATE OF OREGON,
## Department Of Human Resources,
## ex rel Pam JOHNSON,
*Respondent on Review,*

*v.*

## Jason BAIL,
*Petitioner on Review.*

(CC F542; CA A83626; SC S43406)

938 P2d 209

Clayton C. Patrick, Salem, argued the cause and filed the petition for petitioner on review.

Gordon L. Dick, Salem, argued the cause and filed the brief for respondent on review.

GRABER, J.

## GRABER, J.

█  We are called on to decide what role, if any, a parent's illegal act of custodial interference plays in a court's decision with respect to that parent's motion to modify child custody. We hold: (1) If circumstances relating to the capability of one or both parents to care for their child have changed since the previous custody arrangement, then the requirement that there be a change in circumstances before a court will consider modifying custody is satisfied, whatever the reason for the change. (2) When determining custody in a modification proceeding, after finding a change in circumstances, the court is to consider a parent's "conduct" only if that conduct is "causing or may cause emotional or physical damage to the child." ORS 107.137(3).

The Court of Appeals reviewed the facts in this case *de novo*. ORS 19.125(3). This court has the option of again reviewing the facts *de novo* or of limiting its review to questions of law. ORS 19.125(4). The salient facts relevant to a determination of the issue before us are not in dispute; their legal significance is. For that reason, we do not review the facts *de novo*. We take the following facts from the findings of the Court of Appeals and from undisputed additional facts in the record.

This child custody case involves the unmarried parents of a girl who was born on July 6, 1987. Father's paternity was established pursuant to statute. Mother had physical custody of the child from birth. Pursuant to ORS 109.175,[1] mother also had legal custody. Father visited the child two or three times a week during the first few weeks after her birth. At the time, mother and the child lived with mother's parents in Dallas, Oregon.

A dispute arose between the parties, and father made threats against mother and members of her family.

---

[1] ORS 109.175 provides, in part:

"If paternity of a child born out of wedlock is established pursuant to * * * an order or judgment entered pursuant to * * * ORS 416.400 to 416.470, * * * the parent with physical custody at the time of filing of the * * * notice under ORS 416.415 * * * has sole legal custody until a court specifically orders otherwise."

Mother then moved to Salem with the child, without telling father their whereabouts. When father located mother a few months later, she moved to Willamina. When father again located her in late 1988, mother moved to California, without informing him, and took an assumed name. At that time, mother had legal custody of the child.

Meanwhile, father began court proceedings to establish visitation rights with the child. The trial court granted an order of visitation on November 5, 1987, but father was not able to see the child, because he did not know where she was. He then sought custody of the child. On December 23, 1988, the trial court issued an order changing the child's legal custody to father. Mother had not appeared in opposition to either motion. No judgment was entered.[2]

About four years later, in late 1992, father and police located mother in California. Mother and child returned to Oregon. In February 1993, mother pleaded guilty to custodial interference in the second degree, ORS 163.245.[3] Mother was sentenced to 20 hours of community service; she completed that sentence.

The child continued to live with mother after her return to Oregon. The child was reintroduced to father gradually, but suffered serious emotional problems as a result of that effort.

In 1993, mother filed a motion to modify the 1988 default order, seeking to return legal custody of the child to her. Following a trial in early 1994, at which two experts testified that it was in the child's best interests to remain with mother, the trial court granted custody to mother. Judgment was entered on March 17, 1994.

---

[2] Mother does not assert that the absence of a judgment following the 1988 default order has legal significance. We therefore do not consider that question.

Neither does mother contend that the Court of Appeals erred when it ruled that she had received adequate service of father's motions. *State ex rel Johnson v. Bail*, 140 Or App 335, 341, 915 P2d 439 (1996). We therefore do not consider that question.

[3] In a separate proceeding, the juvenile court granted temporary custody of the child to the agency then known as Children's Services Division. However, mother retained physical custody subject to father's visitation. The juvenile court case was consolidated with the present action.

Father appealed to the Court of Appeals, which affirmed the trial court's judgment. *State ex rel Johnson v. Bail*, 140 Or App 335, 915 P2d 439 (1996). We allowed father's petition for review. Father's proposed rule of law is that a change in circumstances resulting directly or indirectly from a parent's illegal act of custodial interference should be disqualified, as a matter of equity, from triggering an analysis of a potential change in custody. That proposed rule of law is based on the Court of Appeals' holding in *Welby and Welby*, 89 Or App 412, 749 P2d 602 (1988). For the reasons that follow, we affirm the decision of the Court of Appeals in the present case.

■       ORS 109.103 allows unmarried parents to initiate a civil proceeding to determine custody of their child in cases in which paternity has been established. That statute provides, in part:

"The parents shall have the same rights and responsibilities regarding the custody and support of their child that married or divorced parents would have, and the provisions of ORS 107.095 to 107.425 that relate to the custody or support of children shall be applicable to the proceeding."

In turn, ORS 107.135 gives the court the power to modify custody judgments.[4] It provides that, on either party's motion and after proper notice, the court may

"[s]et aside, alter or modify so much of the decree as may provide for * * * the custody, visitation, support and welfare of the minor children * * *."

In addition, ORS 109.175 provides, in part:

*"The first time* the court determines who should have legal custody, neither parent shall have the burden of proving a change of circumstances." (Emphasis added.)

That wording implies, and we hold, that the burden of showing a change in circumstances *does* apply to a parent seeking a change of custody in subsequent proceedings.

■       The child custody statutes do not specify what the concept of a "change of circumstances" means. However, this

---

[4] ORS 107.135 and 109.175 were amended in 1995 in ways not relevant to this case. Or Laws 1995, ch 22, § 2; Or Laws 1995, ch 608, § 4.

court has established a two-step inquiry to be used in determining whether a court should modify a custody arrangement:

> "A petitioner seeking a change of custody must show (1) that after the original judgment or the last order affecting custody, circumstances relevant to the capacity of either the moving party or the legal custodian to take care of the child properly have changed, and (2) that considering the asserted change of circumstances in the context of all relevant evidence, it would be in the child's best interests to change custody from the legal custodian to the moving party." *Ortiz and Ortiz*, 310 Or 644, 649, 801 P2d 767 (1990) (footnote omitted; citations omitted).

*See also Greisamer and Greisamer*, 276 Or 397, 400, 555 P2d 28 (1976) (same two-step analysis). In the absence of evidence of a change in circumstances since the last arrangement of custody, the court does not reach the second step in the analysis. *Id.* at 401.

The requirement that there be a change in circumstances before a court will consider modifying custody is a rule of long standing. This court first required a parent to show a change in circumstances to justify a modification of custody in *Merges v. Merges*, 94 Or 246, 257-58, 186 P 36 (1919). There, the court wrote:

> "[I]t is plain that since the [prior] decree * * *, no material change has occurred in the father's ability or inclination to care for the child in the best possible manner. If he was fit then to have the care of the child, he is fit now. * * * It is best under the circumstances to let well enough alone until new conditions intervene to disturb the status established by that decree."

The burden of showing a change in circumstances rests on the parent seeking a change of custody. *Id.* at 254. This court repeatedly has enforced the change-in-circumstances requirement in later cases as well. *See, e.g., Deffenbaugh and Deffenbaugh*, 286 Or 759, 765, 596 P2d 966 (1979) (requiring a showing of change in circumstances); *Henrickson v. Henrickson*, 225 Or 398, 402, 358 P2d 507 (1961) (same); *Leverich v. Leverich*, 175 Or 174, 179-80, 152 P2d 303 (1944) (same).

■ The rationale for the change-in-circumstances rule is that, unless the parent who seeks a change in custody establishes that the facts that formed the basis for the prior custody determination have changed materially by the time of the modification hearing, the prior adjudication is preclusive with respect to the issue of the best interests of the child under the extant facts. In *Merges*, for example, this court cited the statute making judgments conclusive and explained:

> "The court rendered a decree respecting the condition and custody of the child. The defendant cites many precedents to the effect that this decree, like all others of a court having competent jurisdiction of the persons and of the subject matter, is final and that it cannot be overturned or modified unless subsequent conditions justify such a change." 94 Or at 253-54.[5]

*See also Greisamer*, 276 Or at 400-01 (prior custody order is "res judicata" in later modification proceedings); *Henrickson*, 225 Or at 402-03 (same). The purposes served by the change-in-circumstances rule are "to avoid repeated litigation over custody and to provide a stable environment for children." *Ortiz*, 310 Or at 649. The inquiry into whether there has been a change in circumstances since the time of the previous custody arrangement is a factual one that relates to the capability of one or both parents to care for the child. *Greisamer*, 276 Or at 400.

As noted earlier in this opinion, the Court of Appeals has carved out an exception to the change-in-circumstances rule. In *Welby*, that court held that a parent "cannot rely on evidence" of a "strengthened relationship" with a child to establish a change in circumstances, if that strengthened relationship resulted from abduction and secreting of the child. 89 Or App at 414. In such a circumstance, the court held, the parent who engaged in the illegal conduct cannot meet the first step of the two-part inquiry into whether a court should modify a custody arrangement and, therefore, the court cannot reach the issue of the child's best interests. *Id.* at 414-15.

---

[5] The statute that this court cited in *Merges* was the predecessor of, and is materially identical to, ORS 43.130(1).

*Welby* held, and father argues here, that certain kinds of criminal conduct prohibit proof of a change in circumstances. However, we are dealing here with a legislative scheme. The legislature could make that policy choice if it wishes, but at present no statute precludes inquiry into an otherwise sufficient change in circumstances simply because that change can be traced, in whole or in part, to a parent's unlawful act.

Neither do we find anything in the rationale behind or purposes of the change-in-circumstances rule, as heretofore announced by this court, to support father's proposed rule of law. Punishment of a parent's past misconduct and deterrence of potential misconduct by others in the future are functions of the criminal law, which prohibits custodial interference. *See, e.g.,* ORS 163.257 (custodial interference in the first degree); ORS 163.245 (custodial interference in the second degree). By contrast, the overriding theme of the child custody statutes is the best interests of the child.[6]

A child whose circumstances have changed is entitled, when a parent institutes a proper proceeding, to consideration of the child's best interests. If the change in circumstances results from the parent's illegal act, were the court to refuse to consider whether (1) the change in circumstances justifies a modification of custody and (2) a modification is in the best interests of the child, then the court would be punishing the child for the parent's misconduct. We are unwilling to do that. To the extent that this opinion is inconsistent with *Welby*, *Welby* no longer controls.

■　　We now turn to an application of the change-in-circumstances rule. In the present case, a 1988 default order granted custody to father, when the child was 1-1/2 years old. When the court granted custody to mother in 1994, the child was nearly seven years old. The trial court found that circumstances had changed because of "the child's unfamiliarity

---

[6] *See, e.g.,* ORS 107.137 ("In determining custody of a minor child * * *, the court shall give primary consideration to the best interests and welfare of the child."); ORS 107.169(5) (joint custody order may be modified on showing of changed circumstances and "showing that the modification is in the best interests of the child"); ORS 109.175 (in determining custody of a child born to unmarried parents, the "court shall give primary consideration to the best interests and welfare of the child").

with [father] and the risk now posed to the emotional stability of the child if [her] custody were awarded to [father]." On *de novo* review, the Court of Appeals also found a change in circumstances. Specifically, the Court of Appeals found that the child had experienced serious emotional problems for a period of several months after being reintroduced to father and that her emotional problems "will only be exacerbated if father were to be awarded sole custody of the child." *Bail,* 140 Or App at 344.

As noted, we accept the factual findings of the Court of Appeals. Indeed, father's counsel concedes before this court that, *factually,* there was a change in circumstances. He argues only that a change in circumstances resulting directly or indirectly from a parent's illegal act of custodial interference should be disqualified, as a matter of equity, from triggering an analysis of a potential change in custody. We have rejected that position above. We conclude that the first step of the modification analysis is satisfied.

▮▮▮▮ The second step in our two-step inquiry focuses on whether the requested modification of custody is in the child's best interests. The welfare of the child is the "paramount and controlling consideration above all other questions." *Henrickson,* 225 Or at 403. "[A] change in circumstances will warrant a change in custody only if it is in the best interests of the child." *Greisamer,* 276 Or at 402.

That "best interests of the child" inquiry is required by statute. ORS 107.137(1) and (2).[7] *See also* ORS 109.175 (in determining custody of a child born to unmarried parents,

---

[7] ORS 107.137 provides, in part:

"(1) In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court may consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship; and

"(d) The abuse of one parent by the other.

"(2) The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors."

the "court shall give primary consideration to the best interests and welfare of the child and shall consider all the standards set out in ORS 107.137"). Additionally, ORS 107.137(3) provides:

"In determining custody of a minor child pursuant to ORS 107.105 or 107.135, the court shall consider the *conduct*, marital status, income, social environment or life style of either party *only if* it is shown that any of these factors are causing or may cause emotional or physical damage to the child." (Emphasis added.)

Under that provision, a parent's "conduct" shall be considered *only if* it is causing or in the future may cause a specified harm to the child. A parent's illegal act is a kind of "conduct." If that conduct is causing or may cause the child emotional or physical damage, then the court must consider that illegal act in making its determination regarding custody. Conversely, *unless* a parent's illegal act is causing or may cause damage to the child, that conduct is not a consideration.

Here, the Court of Appeals, like the trial court, weighed the statutory factors and found that it was in the child's best interests to grant custody to mother, notwithstanding her illegal conduct. *Bail*, 140 Or App at 344. Father argues that the emotional problems that the child has experienced as a result of her reintroduction to him are due to mother's illegal conduct. Mother's conduct did cause harm to the child by depriving her of a relationship with her father and thereby making the child's reintroduction to father traumatic. Nonetheless, the evidence in the record is such as to entitle the trial court and the Court of Appeals to conclude, as they did, that it is in the child's best interests for custody to be with mother.

In summary: (1) If circumstances relating to the capability of one or both parents to care for their child have changed since the previous custody arrangement, then the requirement that there be a change in circumstances before a court will consider modifying custody is satisfied, whatever the reason for the change. (2) When determining custody in a modification proceeding, after finding a change in circumstances, the court is to consider a parent's "conduct" only if that conduct is "causing or may cause emotional or physical

damage to the child." ORS 107.137(3). In this case, because there was a change in circumstances between the time of the 1988 custody order and the 1994 modification hearing, and because the evidence showed that it was in the child's best interests to continue living with mother notwithstanding her conduct, the trial court did not err in awarding custody to mother.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.