Argued and submitted January 4, 2002, reversed in part; remanded in part with instructions; otherwise affirmed February 5, 2003

Robert M. EVANS
and Margaret M. Evans,
*Appellants,*

*v.*

Olafur E. BRENTMAR,
Benjamin M. Erskine,
and Terry M. Mitchell,
*Respondents.*

97-1238-L-1; A110625

62 P3d 847

Douglas J. Richmond argued the cause for appellants. With him on the briefs was Kellington, Krack, Richmond, Blackhurst & Sutton, LLP.

Joel DeVore argued the cause for respondents. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C.

Before Edmonds, Presiding Judge, and Kistler and Schuman,* Judges.

SCHUMAN, J.

---

* Schuman, J., *vice* Armstrong, J.

## SCHUMAN, J.

Plaintiffs appeal from a judgment dismissing their claims and awarding damages, attorney fees, and costs to defendants on defendants' counterclaim. ORS 19.245(2)(b). The judgment, based on plaintiffs' default, was entered on June 1, 2000, "*nunc pro tunc*, as of April 8, 1998." Plaintiffs contend that the court erred in denying their motion to set aside the default judgment against them, in awarding attorney fees, and in entering the judgment *nunc pro tunc*. We hold that the court erred in awarding attorney fees and costs, in directing that the judgment be entered "*nunc pro tunc*, as of April 8, 1998," and in awarding interest from that date. In all other respects, we affirm.

Plaintiffs leased rural property in southern Oregon to defendants. Disputes arose. Plaintiffs accused defendants of failing to make agreed-on improvements, using the land for illegal activities, and not paying rent. Defendants, in turn, accused plaintiffs of making the land unusable by running a herd of cattle on it. On August 12, 1996, plaintiffs filed a forcible entry and detainer action (FED) against defendants, alleging a breach of the lease agreement. In the same month, defendants filed an answer with affirmative defenses and a counterclaim for damages and attorney fees, alleging that it was plaintiffs who had breached the lease.

Three months passed without any response to defendants' counterclaim from plaintiffs, who, apparently, had left their residence in Ashland and moved to Utah. Finally, on November 25, 1996, plaintiffs filed an amended complaint adding a claim for breach of contract and seeking damages, attorney fees, and costs but still not responding to the counterclaim. On December 6, 1996, defendants filed an answer to the amended complaint, addressing only plaintiffs' new breach of contract claim. On the same day, defendants confessed judgment on the FED. The court entered an order requiring defendants to vacate the property at the end of the lease term, to pay rent, and to maintain insurance. The order did not address plaintiffs' breach of contract claim or defendants' counterclaim, instead postponing treatment of those

claims to "a subsequent hearing, preferably through court-annexed arbitration * * * to be set up by Plaintiffs filing a pleading to set forth Plaintiffs' claims for damages."

The arbitration either did not occur or did not succeed, because after nine months, in September 1997, the court set a trial date for December and sent the parties a "Notice" of a pretrial hearing to be held on November 10. Under a caption in capital letters stating, "IMPORTANT NOTICE: PLEASE READ," the notice declared: "Failure to appear at the [pretrial hearing] indicated above at the time and place specified may result in an order being rendered against you in this case." Plaintiffs did not attend the hearing. Between November 19 and December 1, defendants sent several proposed orders of default to the trial court and to plaintiffs at their addresses in Ashland and Utah (plaintiffs' counsel had withdrawn in October 1997 and plaintiffs remained unrepresented for two years, until November 1999). After the last proposed order was sent, the trial court signed an order of default granting defendants the full amount prayed for in their counterclaim. The order was entered in the trial court register on December 9. It did not mention plaintiffs' claims for damages.

Another 10 weeks passed, and, on February 26, 1998, defendants submitted to the court, but not to plaintiffs, a statement of attorney fees. Thereafter, on April 9, 1998, the court entered a money judgment based on the default order of December 9, 1997, and awarded defendants damages, attorney fees, and costs. Like the order, the judgment did not mention plaintiffs' claim for damages.

Nineteen months passed without any word from plaintiffs. Finally, in September 1999, the trial court issued a writ of execution authorizing the Jackson County Sheriff to seize plaintiffs' property in satisfaction of the judgment against them. On November 8, the day before the sheriff's sale, plaintiffs, having retained counsel, tendered the full amount due to defendants and filed a motion to vacate and set aside the default order and judgment. Defendants, for their part, filed a satisfaction of judgment.

The hearing on plaintiffs' motion to set aside the default occurred on December 20, 1999. Plaintiffs raised several arguments attacking the default, principally that defendants had not provided them with "written notice of the application for an order of default at least 10 days * * * prior to entry of the order of default," as required by ORCP 69 A(1). The trial court denied plaintiffs' motion. Plaintiffs moved that the court reconsider and argued, for the first time, that the judgment of default was not final because it did not dispose of all claims against all parties and did not contain the necessary language ("an express determination that there is no just reason for delay") to make it final under ORCP 67 B. The court denied the motion to reconsider but agreed that the earlier April 1998 judgment was not final. To rectify that problem, the court, after several hearings, ultimately entered an amended judgment dismissing plaintiffs' original claim for damages, awarding damages and attorney fees to defendants on their counterclaim, and announcing that the judgment, although entered on June 1, 2000, was *nunc pro tunc* April 8, 1998.

■ We turn first to plaintiffs' argument that the trial court erred in denying their motion to set aside the default judgment. We review the denial of a motion to set aside a default for abuse of discretion, *State ex rel Johnson v. Bail*, 140 Or App 335, 339, 915 P2d 439 (1996), *aff'd*, 325 Or 392, 938 P2d 209 (1997), mindful, however, that the court has no discretion to act outside of legal standards. Plaintiffs' argument derives from ORCP 69 A(1), which describes the circumstances under which a party may obtain a default:

> "When a party against whom a judgment for affirmative relief is sought has been served with summons pursuant to Rule 7 or is otherwise subject to the jurisdiction of the court and has failed to plead or otherwise defend as provided in these rules, the party seeking affirmative relief may apply for an order of default. If the party against whom an order of default is sought has filed an appearance in the action, or has provided written notice of intent to file an appearance to the party seeking an order of default, then the party against whom an order of default is sought shall be served with written notice of the application for an order of default at least 10 days, unless shortened by the court, prior to entry of the order of default. These facts, along with the fact

that the party against whom the order of default is sought has failed to plead or otherwise defend as provided in these rules, shall be made to appear by affidavit or otherwise, and upon such a showing, the clerk or the court shall enter the order of default."

Plaintiffs contend that defendants had to notify them of the application for a default order 10 days before the order was entered and that defendants did not do so. They also contend that, even if they had adequate notice, they did not "fail[ ] to plead or otherwise defend." Their supposed failure, they argue, was based on their lack of response to defendants' counterclaim, but that counterclaim ceased to exist when defendants did not repeat it in their supplemental answer to plaintiffs' amended complaint. Therefore, according to plaintiffs, there was nothing to reply to, so they cannot default for failing to reply. Defendants counter that (1) plaintiffs were not entitled to notice; (2) even if they were, defendants properly and timely notified them; (3) defendants' amended answer did not abandon their counterclaim; and (4) because plaintiffs did not file a responsive pleading to that counterclaim as required by ORCP 13 B ("[t]here shall be a reply to a counterclaim denominated as such * * *"), they "failed to plead or otherwise defend" as required by ORCP 69 A(1) and therefore defaulted.

■ We begin with the issue of notice. Plaintiffs contend that they never received notice of the impending default as required by ORCP 69 A(1). Defendants respond that no notice was required and that, in any event, plaintiffs received notice. We need not decide if notice is or is not required because we agree with defendants' alternative argument: Plaintiffs received notice.

Plaintiffs maintain that "[t]here is no record indicating that an application for an order of default was ever served upon the Plaintiffs as required by ORCP 69 A." That is incorrect. On November 20, defendants' lawyer sent a letter to plaintiffs that stated:

"Within please find proposed Order of Default. I will forward to you that Order signed by the Court. Subsequently, a Judgment of Default will be entered and I will forward to you that document as well."

The record contains a certificate of service from defendants' lawyer dated November 20, 1997. The order of default was entered on December 9. Although the letter does not use the precise language of the rule—it does not recite that defendants are making an "application for an order of default"—it states that the draft order is a "proposed order of default." It clearly warns plaintiffs of defendants' intention and of impending judicial action. Further, the fact that defendants might have presented their default argument to the court before sending the letter to plaintiffs is not relevant; ORCP 69 A(1) requires notice 10 days before *entry* of a default order, not 10 days before applying for default. The purpose of the rule is to ensure that a party will not be defaulted by surprise before having an opportunity to plead or defend; plaintiffs here had that opportunity. They received adequate timely notice.[1]

■ Plaintiffs argue in the alternative that, even if they received notice, the default itself was error because it was based on their failure to plead in response to defendants' counterclaim—a counterclaim that, according to plaintiffs, defendants abandoned when they did not reassert it in response to plaintiffs' amended complaint. That argument suffers from at least two fatal flaws. First, defendants filed their counterclaim on August 26, 1996. Plaintiffs filed their amended complaint, which did not respond to the counterclaim, on November 26. Defendants did not file the "amended" answer that purportedly abandoned their counterclaim until December 6. Therefore, even if we were to conclude that defendants did abandon their counterclaim, they did so after plaintiffs had already allowed more than three months to elapse without a responsive pleading. That lapse alone is sufficient to put entry of a default within the trial court's discretion.

■ Second, the trial court was correct in concluding that defendants did not, in fact, abandon their counterclaim. Their pleading in response to plaintiffs' amended complaint (identical to their original FED with the addition of a claim

---

[1] To the extent, if any, that defendants' attorney's letter to plaintiffs was technically defective, we would ignore that defect because it would "not affect the substantial rights of the adverse party." ORCP 12 B.

for damages) was not an "amended answer" but an answer to an amended complaint, captioned as such: "Answer to Plaintiffs' Amended Complaint." The document by its own terms addresses only the new claim. The opening paragraph states, "Plaintiffs' Amended Complaint added a new cause of action entitled Breach of Contract * * * and Defendants herein Answer *those paragraphs* as follows * * *." (Emphasis added.) Defendants' pleading, in other words, was a supplemental answer, not a superseding answer. Further, that is how plaintiffs regarded it at the time. After the alleged abandonment, plaintiffs prepared, and the court signed, an order dealing with how to resolve "[a]ll issues regarding damages (those raised in Defendants' counterclaim and any and all claims Plaintiffs may have * * *)." In March 1997, plaintiffs filed a motion to transfer the case from district court to circuit court "on the basis that the complaint and counterclaim both pray for damages in excess of $50,000.00."

Plaintiffs cite two cases in support of their theory that defendants abandoned their counterclaim by failing to reallege it in their supplemental pleading. Neither helps them.

In *Propp v. Long*, 313 Or 218, 222-23, 831 P2d 685 (1992), the court held that, when a counterclaim was struck from a party's pleadings and not realleged, the counterclaim was no longer part of the case and a judgment that did not resolve it could nonetheless be final. In the present case, defendants' counterclaim was never struck. Further, in *Propp*, the struck counterclaim responded to an allegation in the plaintiff's original complaint that the plaintiff abandoned before the defendant's amended answer; the counterclaim, then, was not part of the case because the claim it countered had been withdrawn. *Id.* at 223. That is not the case here; plaintiffs' amended complaint did not withdraw anything.

*Klemgard et al v. Wade Seed Co.*, 217 Or 409, 342 P2d 757 (1959), involved the question whether an original complaint could be admitted as evidence to impeach a party by showing that the party had changed its position during the proceedings. In ruling that the original complaint was admissible, the court stated parenthetically and apropos of nothing, "Although a pleading loses its status as such when it

is superseded by an amended one, it never vanishes from the files." *Id*. at 414. That statement does not help plaintiffs here for several reasons: it is pure *dictum*, it deals with a superseded pleading as opposed to a supplemental one, and it stems from a time before the wholesale revision of Oregon civil procedure effected by the adoption of the Oregon Rules of Civil Procedure.

■ In short, defendants never abandoned their counterclaim nor was it ever extinguished by operation of law. By failing to plead a response to that counterclaim, plaintiffs defaulted, and the trial court did not err in denying their motion to set aside the default.[2]

■ The court did err, however, in attempting to enter the June 1, 2000, judgment *nunc pro tunc* April 8, 1998. The attempt resulted from the fact that the purported judgment entered in 1998 did not dispose of plaintiffs' claim for damages against defendants and did not contain an "express determination that there is no just reason for delay * * *." ORCP 67 B. It was therefore neither a final judgment nor a final partial judgment, despite the fact that the order on which it was based was valid. *Id.*

■ A judgment *nunc pro tunc* has the effect of "relating back" a later judgment to an earlier date—here, the June 2000 judgment to April 1998.

> "The function of a *nunc pro tunc* entry is to make a record of what was previously done, but not then entered; not to make an order now for then, but to enter now for then an order previously made. The purpose of a *nunc pro tunc* order is to supply an omission in the record of action actually taken but omitted from the record through inadvertence or mistake, or to enter an order which should have been made as a matter of course and as a legal duty. * * * Such an order is effective only when it records a previously omitted truth—it does not create, but only speaks what has been done."

---

[2] Plaintiffs also assign error to the trial court's denial of their motion to set a trial date. We take that assignment to be an assertion that the trial court erred not only in defaulting them on defendant's counterclaim but also in dismissing their claim because they failed to appear at a pretrial conference and failed to respond to notices of default. We reject that argument without discussion. *Blue Horse v. Sisters of Providence*, 113 Or App 82, 830 P2d 611, *rev den*, 314 Or 727 (1992).

*Gillespie v. Kononen*, 310 Or 272, 276 n 7, 797 P2d 361 (1990) (citations omitted). An entry *nunc pro tunc* is "a manifestation of the inherent power of a court to make its record speak the truth, that is, to correct clerical errors at a later time so that the record reflects what actually occurred at an earlier time." *State ex rel Juv. Dept. v. Dreyer*, 328 Or 332, 339, 976 P2d 1123 (1999). It cannot be used as a "means of patching up a defective record by injecting therein something that did not occur." *Frederick & Nelson v. Bard*, 66 Or 259, 262, 134 P 318 (1913).

■ Defendants argue that the use of *nunc pro tunc* here was proper because it simply corrected an error the trial court made in April 1998. As the court itself explained in 2000:

> "I think it was clearly within the intention of the court to allow and make the judgment final at that time, and I—I failed to do so for a variety of reasons.
>
> "* * * * *
>
> "I wanted to conclude the matter by the entry of some form of judgment, to make the case over.
>
> "* * * * *
>
> "I granted a motion for an Order of Default. And that the Order of Default included all of the matters asserted in the pleadings, wherein the defaulting party was asking the court for relief. It wasn't just one part of it or another part of it, it was on the whole case."

There is a difference, however, between a clerical error or an inadvertent omission of an action actually taken, on the one hand, and a legal error or omission of an action that never occurred, on the other. In this case, the error was legal (entering a purported judgment that does not conform to ORCP 67 B) and the omission was of an action that never occurred (disposing of plaintiffs' claims against defendants). Mere intention is not enough. Because the April 1998 purported judgment did not in fact or by operation of law dismiss plaintiffs' claim, entry of the later judgment *nunc pro tunc* to that date was error. *Butler v. Dept. of Corrections*, 138 Or App 190, 208, 909 P2d 163 (1995) (purported judgment that fails to meet requirements of ORCP 67 B cannot be "corrected" *nunc*

*pro tunc*). The portion of the trial court's June 2000 judgment purporting to make it retroactively effective to April 1998 by entry *nunc pro tunc* is ineffective. *State v. Lavitsky*, 171 Or App 506, 517, 17 P3d 495 (2000), *rev den*, 332 Or 430 (2001) (deleting *nunc pro tunc* portion of judgment). Further, interest on the judgment should begin to accrue as of June 1, 2000, the date that the final judgment in the present case was actually entered. *Butler*, 138 Or App at 208.

 The court also erred in awarding attorney fees to defendants. ORCP 68 C(4)(a) provides:

"A party seeking attorney fees or costs and disbursements shall, not later than 14 days after entry of judgment pursuant to Rule 67:

"C(4)(a)(i) File with the court a signed and detailed statement of the amount of attorney fees or costs and disbursements, together with proof of service, if any, in accordance with Rule 9 C; and

"C(4)(a)(ii) Serve, in accordance with Rule 9 B, a copy of the statement on all parties who are not in default for failure to appear."

Plaintiffs argue that they were never served with a copy of defendants' fee statement. Defendants concede that fact but contend that such service was not required because plaintiffs were "in default for failure to appear." We agree with plaintiffs. Although no cases elaborate on the meaning of "appear" or "appearance" as that term is used in ORCP 68 C(4)(a), the Supreme Court defined the term for purposes of a related statute, ORCP 69 A(1), as follows:

"The legal meaning of the word 'appearance' is '[a] coming into court as a party' or '[a] formal proceeding by which a defendant submits himself to the jurisdiction of the court.' *Black's Law Dictionary*, 97 (6th ed 1990)."

*In re Eadie*, 333 Or 42, 57, 36 P3d 468 (2001); *accord Morrow Co. Sch. Dist. v. Oreg. Land and Water Co.*, 78 Or App 296, 300 n 4, 716 P2d 766 (1986) ("appearance" in predecessor to ORCP 69 A(1) dealing with notice of an intent to take default defined broadly; "[a]llmost anything that indicates that the party is interested in the case will suffice"). Plaintiffs, then, were not in default for failure to appear; they were in default

for failure to plead or otherwise defend. Defendants therefore were required to serve them with a statement of attorney fees.

■ Further, defendants do not argue that this failure should be excused because plaintiffs were not prejudiced. *Little Whale Cove Homeowners Assoc. v. Harmon*, 162 Or App 332, 342, 986 P2d 616 (1999). That being the case, we presume prejudice; lacking both statutory and actual notice, plaintiffs had no opportunity to register their objections as permitted by ORCP 68 C(4)(b). *CIT Group v. Kendall*, 151 Or App 231, 235, 948 P2d 332 (1997).

Award of attorney fees and costs reversed; June 2000 judgment remanded with instructions to delete references to entry of judgment *nunc pro tunc* April 8, 1998, to delete award of interest from that date and to award interest from June 1, 2000; otherwise affirmed.